H. H. HARRIS v. THEODORE CURRAN, et al.—H. H. HARRIS v. S. B. EDWARDS, et al.

1. TAX DEED, Not Void. A tax deed describing the property sold as certain lots "on Tenth avenue west, city of Topeka," is not void because it does not otherwise describe them as *in* the city of Topeka.

2. TAX DEED, Not Void. A tax deed is not void because it recites that the sale was made on May 6, 1870, "at the sale begun and publicly held on the first Tuesday of May, 1870," when in fact May 6, 1870, was Friday, and the first Tuesday of May, 1870, was the third day of the month.

3. ———— *Limitation of Action.* Irregularities in the assessment of taxes cannot be considered as invalidating a tax deed after a statute of limitations has completely and finally run in favor of the tax deed.

4. ———— A valid tax deed vests in the grantee the absolute title to the property in fee simple.

5. ———— And where the property conveyed by such a tax deed is not in the actual possession of any person, the tax deed also vests in the grantee the constructive possession thereof.

6. ———— *Limitation of Action.* And where such a tax deed was executed on May 7, 1873, and recorded on May 9, 1873, and the property remained vacant and unoccupied until April, 1879, no statute of limitations ran against such tax deed; but the two-years statute of limitations contained in section 116, chapter 107, of the General Statutes of 1868, ran in favor of the tax deed and barred all actions having the effect to defeat or avoid it.

7. TAX DEED—*Limitation of Action.* Where another tax deed is afterward, and on March 22, 1879, executed and recorded, and the purchase

takes possession of the property in April, 1879, the first tax-deed holder has, under section 141, chapter 107, Compiled Laws of 1879, five years after the recording of the second tax deed within which to commence an action to defeat or avoid such second tax deed.

8. PRINTER'S FEE; *Voidable Tax Deed.* Where the whole of the printer's legal fee, chargeable against property for publishing such property as required by law in the delinquent tax list, is charged against the property, and the property sold therefor at a tax sale, while only 20 per cent. of that amount is paid to the printer, *held,* that such irregularity in the tax sale renders the tax deed voidable at any time within five years after the recording of the tax deed.

*Error from Shawnee District Court.*

TWO ACTIONS, brought by *Harris* against *Curran* and others, to recover the possession of certain lots in the city of Topeka. February 19, 1884, the second trial was had in each case, and in each a judgment was rendered for the defendants, and against the plaintiff, for title and costs. *Harris* brings the cases to this court. The opinion states the facts.

*Douthitt, Hazen & Isenhart,* and *H. H. Harris,* for plaintiff in error.

*Guthrie & Bergen,* and *Thos. H. Bain,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: On November 24, 1882, H. H. Harris commenced two actions in the district court of Shawnee county : one against Theodore Curran, C. D. Savage and Stella Savage for the recovery of lots numbered 135, 137, and 139, on Tenth avenue west, in the city of Topeka, and the other against S. B. Edwards and Theodore Curran for the recovery of lots numbered 141 and 143, on the same avenue. The two cases are precisely alike in nearly all their facts, and so near alike with regard to the questions of law involved therein that one opinion will answer for both cases. Each case was tried by the court without a jury, and special findings of fact and law

were made by the court.   From these findings, the following facts appear:

In 1860, the lots in controversy belonged to Harvey G. Young, he being the original patentee.   They were subject to taxation at the time, and have at all times since been subject to taxation.   Afterward, Young died, and on December 6, 1866, Erastus Tefft, his administrator, and Ruth J. Young, his widow, conveyed the lots to John Guthrie, and the deeds were recorded on January 12, 1867.   On May 6, 1870, the lots were sold for the delinquent taxes of 1869, to J. F. Carter, and on May 25, 1870, Carter assigned the tax-sale certificate to Patrick Kelly.   On May 7, 1873, a tax deed was executed by the county clerk to Kelly for said lots for the taxes of 1869, as well as for the taxes of 1870, 1871, and 1872, paid by the tax-sale purchaser, and such tax deed was recorded on May 9, 1873.   On May 17, 1873, Kelly conveyed said lots to Henry S. Chapin, and the deed was recorded on the same day.   The taxes of 1873 were not paid, and on May 5, 1874, the lots were sold to B. J. Ricker for such taxes. On December 31, 1874, Chapin died, leaving Mary Chapin, his widow, as his sole surviving heir.   Up to this time both Chapin and his wife had resided in Kansas and been personally present therein, except for about twenty days.   On March 1, 1879, Ricker assigned his tax-sale certificate to William P. Thompson, and on March 22, 1879, the county clerk executed a tax deed to Thompson for the lots for the taxes for the year 1873, as well as for the years 1874, 1875, 1876, 1877, and 1878, paid by the tax purchaser, and the tax deed was recorded on the same day.   In April, 1879, Thompson took possession of the property; and he and his grantees have retained such possession ever since.   These propositions contained in this last sentence are disputed, but it is admitted that Thompson and his grantees have been personally present in Kansas ever since April, 1879.   Prior to this time, the lots had been vacant and unoccupied.   On December 30, 1880, Thompson conveyed said lots to Mary C. H. Guthrie, and the deed was recorded on the same day.   On

December 30, 1881, John Guthrie and Mary C. H. Guthrie, his wife, conveyed said lots to Theodore Curran, and the deed was recorded on September 5, 1881. On November 11, 1881, Theodore Curran executed a bond for a deed for lots 135 and 137 to Stella Savage, which bond was recorded in December, 1881; and executed a bond for a deed for lots 141 and 143 to S. B. Edwards, and the bond was duly recorded. On January 13, 1882, C. D. Savage, the husband of Stella Savage, took actual possession of the lots sold to Stella Savage. On November 15, 1882, S. B. Edwards took actual possession of the lots sold to him. On November 14, 1882, Mary Chapin, the sole surviving heir of Henry S. Chapin, conveyed all the foregoing lots to H. H. Harris, the plaintiff in this action, and the deed was recorded on the next day. During all this time Mary Chapin resided in Kansas and was personally present therein, except for about three months. On November 24, 1882, these actions were commenced. On February 19, 1884, a second trial was had in each case, and a judgment was rendered in each case in favor of the defendants and against the plaintiff for title and costs; and the plaintiff, as plaintiff in error, now brings the cases to this court. In this court the plaintiff claims that there are at most only two legal propositions to be decided, as follows:

"1st. Has a party holding a tax deed, regular on its face, and being of record more than five years, while the lots are vacant and unoccupied, five years or only two years from the recording of a subsequent tax deed, in which to bring suit against the holders of the last tax deed?

"2d. All the evidence being preserved in the case-made, does it support the twenty-first finding, that the defendants were in the possession of the property in controversy from April, 1879, up to the present time—the plaintiff claiming that no possession was taken of the property until January, 1882?"

The defendants, however, claim that there are still other questions to be decided. They claim that their tax deed is good and entirely sufficient, without reference to any statute of limitations and without reference to the possession of the

property by the defendants or their grantors. This is an important question; for if the defendants' tax deed was perfectly good when executed, there is no necessity for any consideration of any of the other questions which either party may suppose to be possibly involved in this controversy. "The tax deed last executed for the taxes of the latest year will be paramount to the tax deed previously executed for the taxes of some previous year." (*Board of Regents v. Linscott,* 30 Kas. 241, 263; *McFadden v. Goff,* ante, p. 415.)

The defendants also claim that the plaintiff's tax deed is barred by some statute of limitations; and also that it is void on its face for the reasons: 1. Because the lots are described as "on Tenth avenue west, city of Topeka," instead of on Tenth avenue west, in the city of Topeka. 2. Because the deed states that the sale was made on May 6, 1870, "at the sale begun and publicly held on the first Tuesday of May, 1870," when in fact May 6, 1870, was Friday, and the first Tuesday of May, 1870, was the third day of the month. They also claim that the court below erred as against them, for the reason that it refused to permit them to introduce evidence showing that the taxes upon which the plaintiff's tax deed is founded were illegally assessed. We think that the lots were sufficiently described as being *in* the city of Topeka; that the sale made on May 6, 1870, was obviously at a sale begun and publicly held on the first Tuesday of May, 1870, and continued to May 6, 1870; (in this connection see *Patterson v. Carruth,* 13 Kas. 494; *Morrill v. Douglass,* 17 id. 293;) and that the irregularities in the assessment of the taxes cannot be considered after a statute of limitations has completely and finally run in favor of the tax deed. The plaintiff's grantors had a valid tax deed, which vested in them the absolute title to the property in fee simple; (Gen. Stat. of 1868, ch. 107, § 112; *Board of Regents v. Linscott,* 30 Kas. 242, 265;) and as no one was in the actual possession of the property, they were also vested with the constructive possession thereof; for the constructive possession of property always follows the legal title, when the actual possession is not in any other person.

Indeed, up to March 22, 1879, when the defendants' tax deed was executed, the plaintiff's grantors had everything connected with the title to the lots and were entitled to everything connected therewith. No one was disputing their title, or interfering with any of their rights; and consequently they had no cause of action against anyone for any statute of limitations to operate upon. In other words, they had no cause of action to be barred by any statute of limitations. Within the decision of the case of *Case v. Frazier*, 30 Kas. 343, the two-years statute of limitations contained in §16 of the civil code does not commence to run against the holder of the tax deed until the original owner takes possession of the property; and the tax-deed holder has two years thereafter within which to commence his action for the property. See also *Walker v. Boh*, ante, p. 354. It is different, however, with the prior owner; for he has a cause of action against the tax-deed holder as soon as the tax-deed holder puts his tax deed on record. He may sue the tax-deed holder at once to set aside the tax deed, or to remove the cloud from his title, or even in ejectment. (Gen. Stat. of 1868, ch. 107, §118; Comp. Laws of 1879, ch. 107, §142.) And these causes of action may be barred by a statute of limitations. (Gen. Stat. of 1868, ch. 107, §116; Comp. Laws of 1879, ch. 107, §141.) The first of these statutes of limitations, which was in force from March 15, 1868, up to March 11, 1876, barred a cause of action in two years; and the other of these statutes, which is an amendment of the first and which has been in force since March 11, 1876, bars a cause of action in five years. Therefore, from the time when the plaintiff's tax deed was recorded, on May 9, 1873, there was a two-years statute of limitations running in its favor, and there was no statute of limitations of any kind running against it. Upon this and other propositions in this case, see *Myers v. Coonradt*, 28 Kas. 211, 214, *et seq.* And therefore on May 9, 1875, two years after the plaintiff's tax deed had been recorded, this statute of limitations had completely and finally run and made the plaintiff's tax deed absolutely good. By this means the plain-

tiff's grantors' title had become complete and perfect in every particular and in every respect, and all action against it had become completely barred. Every estate, title and interest was then vested and perfected in the plaintiff's grantors, and nothing was left or remained or existed in any other person. Since that time the plaintiff and his grantors have had a right to maintain an action to hold and retain whatever they had already procured under their tax deed. Of course a tax-deed holder cannot maintain an action to obtain something more than what he has already procured under his tax deed. (*Walker v. Boh*, ante, p. 354.) And if he should sue for anything more, the defendant would of course have the right to defend as to the excess. (See case just cited.)

There is also another two-years statute of limitations found in the civil code, §16, subdivision 3, which may also have operated to some extent in favor of the plaintiff's tax deed. There was no five-years statute of limitations then in existence with reference to tax deeds, and none prior to March 11, 1876. Under the circumstances of this case, the plaintiff stands in the place of the original owner of the property. On or before May 9, 1875, his grantors procured the whole of the original owner's title, and all other titles; (*McFadden v. Goff*, ante, p. 415;) while the defendant's tax title dates from March 22, 1879. The plaintiff's title is therefore prior in time to that of the defendants. And after the plaintiff's grantors procured his title, and for several years thereafter, no other person possessed any right, title, interest or possession in or to the property in controversy. Therefore, as between the plaintiff and the defendants, the plaintiff must be considered as the prior and the original owner, and we would think that the plaintiff has the same right to maintain this action that he would have if he were the original patentee. Until the defendants' tax deed was executed the plaintiff's grantors were the owners of the fee, and the absolute and exclusive owners thereof; and it has already been decided by this court that under §141 of the present tax law "the owner of the fee out of possession may commence his action against the

tax purchaser at any time within five years from the time of recording the tax deed." (*Thornburgh v. Cole,* 27 Kas. 490, 498.)

As before stated, § 141 of the present tax law was enacted in 1876, while subdivision 3, § 16, of the civil code, was enacted in 1868. Hence if the two sections in any manner conflict with each other, § 141 must govern; and therefore the plaintiff, whose grantors were the owners of the fee at the time when the defendants' grantors procured their tax deed, and had it recorded, and took possession of the property, had the right to commence his action to defeat the defendants' tax deed at any time within five years after the recording of the defendants' tax deed. And the plaintiff brought his action within that time, and we think he has the right to maintain the same. No one, except the plaintiff and his grantors, has ever had any right to bring an action to test the validity of the defendants' tax deed, and surely some one should have that right. This brings us to the question whether the defendants' tax deed is valid, or not; for if it is valid, they are entitled to recover; but if it is void, or voidable, the plaintiff may recover.

The court below made the following findings, to wit:

"23d. That the printing of the delinquent tax list for the tax sale of 1874 was performed by the printer under a written contract between himself and the county of Shawnee, for twenty per cent. of the legal charges, and the whole of the legal fee was charged against the lots in controversy for the printing of the delinquent list, and formed a part of the taxes for which said lots were sold.

"24th. That the printer did not file his affidavit of publication for more than fourteen days after the last publication, said last publication being April 23, 1874, and said affidavit was not made and filed until August 10, 1874.

"25th. That the assessed valuation of all taxable property of Shawnee county for the year 1873 was $6,010,285, and that the taxes levied for the year 1873 were as follows: For current expenses of the county, five mills on the dollar; to pay interest on 'fair-ground bonds' and the 'Topeka bridge bonds', one mill; for repairing and building county bridges, one mill—all of which levies were made without the direct

vote of the electors of the county, authorizing the same, and that all these taxes so levied entered into and formed a part of the taxes for which said lands were sold in 1874."

The plaintiff claims that upon the facts contained in the foregoing findings the defendants' tax deed is void, or at least voidable, and that the court below erred in holding it valid and in rendering judgment in favor of the defendants and against the plaintiff to that effect. We think the plaintiff's claim is good; for as the whole of the printer's legal fee, chargeable against the lots in controversy for publishing them as required by law in the delinquent tax list of 1874, was charged against the lots and the lots sold therefor, while only 20 per cent. of that amount was paid to the printer, the defendants' tax deed must, within the decision of the case of *Genthner v. Lewis,* 24 Kas. 309, be held to be voidable.

The judgment of the court below in each of these cases will therefore be reversed, and the causes remanded for further proceedings.

All the Justices concurring.