[No. 4691.]

WILLIAMS v. CONROY ET AL.

| 35 | 117 |
| f37 | 182 |
| 37 | 184 |

**1.  Tax Titles—Limitation—Grantees.**

An action by the owner to recover land sold for taxes cannot be maintained after the expiration of five years from the execution and delivery of the tax deed, and a grantee of the original owner acquired no greater rights than his grantor had.

**2.  Tax Titles—Void Deed—Color of Title—Limitation.**

A void tax deed taken in good faith constitutes sufficient color of title under our statute of limitations.

3. **Same—Subsequent Tax Sale.**

Where vacant unoccupied land was sold for taxes and a tax deed regular on its face was executed and delivered to the purchaser, and the purchaser failed to pay subsequent taxes and the land was again sold and the purchaser recorded his tax deed before the expiration of five years from the execution of the first tax deed, and the original owner took no steps within five years after the execution of the first tax deed to recover the land, the holder of the first tax deed could after the expiration of five years from the execution and delivery of his deed and before the expiration of five years from the execution and delivery of the second tax deed maintain an action against the second purchaser for possession of the land and to cancel the second tax deed, although both tax deeds were void in law because of irregularities in the sales, and a quitclaim deed from the original owner to the second purchaser made after the commencement of the action was no defense.

4. **Tax Titles—Limitation—Unoccupied Land—Constructive Possession—Subsequent Tax Deed.**

A tax deed to unoccupied land carries with it constructive possession and will start running the statute of limitations in favor of the purchaser, and the recording of a subsequent tax deed to the same land within five years from the date of the execution and delivery of the former tax deed would not interrupt the running of the statute in favor of the first purchaser so as to prevent the perfection of his title as against the original owner, and after the perfection of his title and within five years from the execution and delivery of the second tax deed he could maintain an action against the second purchaser for possession and to cancel the second tax deed.

*Appeal from the District Court of Las Animas County:*
*Hon. Jesse G. Northcutt, Judge.*

Mr. W. B. MORGAN, for appellant.

Mr. FRED A. SABIN and Mr. R. S. BEALL, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

Both parties claim ownership and right to the possession of certain lands in Las Animas county of which Richard L. Survant. is the patentee. Plaintiff's title is evidenced by tax deeds. Of the defendants all have suffered default except Asa Haines, and as he has succeeded to the title of the others the case will be discussed as if he were the only defendant. Haines' title is twofold: One is evidenced by tax deeds issued in pursuance of a tax sale at a later time and for a later year than were the tax deeds under which plaintiff claims; the other of defendant's titles is evidenced by a quitclaim deed from the patentee obtained after this action was begun but before the answer was filed. Defendant Haines was in actual possession of the land under his tax deeds at the time the complaint was filed. This action was brought by plaintiff to recover possession and to have defendant's tax deeds canceled because they are void.

In the amended answer, by way of cross-complaint defendant Haines sets out his two titles just mentioned, and as he was in actual possession when the action was brought he asks to have his title quieted, his possession confirmed, and for a cancellation of plaintiff's tax deeds.

The cause was tried to the court without a jury upon an agreed statement of facts, and resulted in a decree for defendant in accordance with the prayer of the cross-complaint. From this statement it appears that R. L. Survant, the patentee, allowed the taxes on the lands for the year 1889 to become delinquent, for which they were sold and tax deeds, now held by plaintiff, issued under the sale, which were recorded in June, 1893. The land was vacant and unoccupied, no one being in actual possession of the same after the tax sale and before the tax deeds were recorded and not until some time in January, 1900, when defendant entered under the tax

deeds hereinafter mentioned. The original owner, though cognizant of the tax sale and the execution and recording of the tax deeds, never took any steps to recover possession, apparently abandoning all his rights thereto. Plaintiff's tax deeds are regular and valid on their face, though because of informalities in the sale they are, as a matter of law, void.

After plaintiff's purchase at the tax sale referred to he neglected to pay the taxes on the land for the year 1891, and for such delinquency the land was again sold and tax deeds issued therefor, which were recorded December 18, 1896, and it is these tax deeds upon which the defendant Haines relies for his tax title. He took possession of the land thereunder January 1, 1900, and was so holding at the time of the beginning of this action. These tax deeds, though valid on their face, are void for the same irregularity which affects the plaintiff's earlier ones.

From this statement it appears that plaintiff relies upon tax deeds which were recorded, and under which he held for more than five years thereafter without any action by the original owner, or any other person, in any way questioning that title. The defendant claims title: First, under tax deeds which were recorded less than five years, but under which actual possession was not taken by him for more than five years, after the date of the recording of plaintiff's tax deeds; and second, by virtue of a quitclaim deed executed and delivered by the original patentee owner in February, 1902, and which was after this action was begun and before the amended answer was filed.

1. The defendant obtained nothing by his quitclaim deed; for section 3904, Mills' Ann. Stats., says that no action for the recovery of land sold for taxes shall lie unless the same be brought within five years

after the execution and delivery of a deed therefor by the treasurer, any law to the contrary notwithstanding. More than the full period of five years prescribed by this act of limitation had expired without any act of any sort by the patentee owner to recover possession or to question plaintiff's title under his tax deeds. The quitclaim deed gave to the defendant such rights, and such only, as the grantor himself had. The patentee owner's title, under section 3904, Mills' Ann. Stats., was completely extinguished and barred; hence the patentee had nothing to give when he executed his quitclaim deed, and the defendant received nothing thereby. Express authority for this conclusion is found in *Crisman v. Johnson,* 23 Colo. 264; *De Foresta v. Gast,* 20 Colo. 307, and *Bennet v. N. C. S. L. & I. Co.,* 23 Colo. 470, which hold that a void deed taken in good faith constitutes sufficient color of title under out statute of limitations. See also Desty on Taxation, § 149. That the patentee's title was extinguished, and the same vested in the plaintiff under the facts of this case, see also *Lebanon Mining Co. v. Rogers,* 8 Colo. 34; *Moingona Coal Co. v. Blair,* 51 Iowa 447; *Harris v. Curran,* 32 Kan. 580; *Griffin v. Turner,* 75 Iowa 250; Black on Tax Titles (2d ed.), § 284; *Shawler v. Johnson,* 52 Iowa 472.

*Morris v. St. Louis Nat. Bank,* 17 Colo. 231, is not opposed to this conclusion. There are some observations in the opinion, in the nature of *dicta,* which might seem pertinent, but the holding was that the statute of limitations we are considering was not applicable to that case, as the action was not "for the recovery" of land, and the deed had not been on record for five years before the action was brought.

2. The remaining question, then, is as to which of the titles obtained under the tax deeds shall prevail. Let us again consider the respective claims of

the parties at the time the action was begun. By the tax deeds which plaintiff held the former owner's title was extinquished. This result was effected before defendant's tax deeds were executed. When these later deeds were recorded, though the patentee owner's title was vested in plaintiff by the earlier deeds, it was a defeasible, not an absolute, title, because the full period of limitation had not then run; but afterwards, and before this suit was instituted, plaintiff's title had become absolute by the lapse of the full period. When defendant's tax deeds were subsequently recorded the title, as to the patentee, the original owner, and all the world, was absolute in plaintiff. Whatever effect the recording of defendant's tax deeds had on the title, it was merely and nothing more than that which the record of tax deeds has on the rights and title of an owner whose lands are sold for delinquent taxes. These deeds of the defendant, then, operated to divest plaintiff's title and vest it in the defendant and they are *prima facie* evidence in this suit of defendant's ownership and right of possession. But the defendant's title thereunder was, when the plaintiff filed his complaint, merely defeasible, because the full period of limitation had not expired within which the plaintiff, as the owner, might attack it. Since the plaintiff thus questioned its validity within this period, and as the defendant concedes his deeds are void because of certain irregularities preceding the sale, they must be canceled, and his possession thereunder deemed a trespass.

The defendant concedes that such would be the law were it not for the fact that the recording of his tax deeds has introduced into the case another element that changes such rule. The result of our investigation, however, satisfies us that in this action no weight or significance is to be given to the fact

that defendant's tax deeds were recorded before the full five years had elapsed within which the plaintiff's defeasible tax title under the earlier tax deeds could be defeated by the patentee owner. If it be true, as contended, that the recording of defendant's tax deeds interrupted the constructive possession which the tax deeds drew to the plaintiff, it cannot avail the defendant in this action. Certainly as to the original patentee owner, plaintiff's rights were not thereby affected, otherwise a delinquent tax payer would profit by his own wrong in failing to observe the law by not paying his taxes. Neither do we see how it can affect the relation which exists between plaintiff and such patentee owner or weaken or in anywise interfere with plaintiff's rights under his tax deeds, unless, of course, defendant's inchoate title under the later tax deeds becomes perfected by the lapse of time. The defendant is not claiming in privity with, but adversely to, the original owner as well as the plaintiff, and his relation to the plaintiff being that of a tax purchaser to a former owner makes immaterial the supposed interrupted constructive possession with which plaintiff's tax deeds clothe him.

True it is some courts have held that while the owner is in actual possession the statute does not apply, and that, if not in possession when the tax deeds are recorded, the subsequent taking of actual possession by the former owner, but nothing short of that, stops the running in the tax purchaser's favor of the statute of limitations which such recording sets in motion; but we find no case which holds that the constructive possession which attends the recording of a later tax deed under a sale for a later year operates to interrupt the constructive possession or stop running the statute of limitations under the earlier deed, so far as concerns the relative rights

of its holder and his former owner, and we apprehend that neither actual possession taken by the later purchaser nor the constructive possession which follows the tax deeds can in any way affect the rights of the earlier purchaser as against his former owner. The delinquent original owner's title cannot be saved by any act not taken by him or in his behalf, and certainly not by the act of one who holds in hostility to him.

Furthermore, our statute does not require possession to be taken of land by the purchaser at a tax sale as an essential condition to the running of the statute of limitations. The tax deed draws to it constructive possession of unoccupied land, and it may be, though such a case is not before us, that where to maintain the action a plaintiff must have actual or constructive possession or where some other statute of limitations requires possession to be taken the absence of the one or the divestiture of the other may injuriously affect the tax purchaser's rights when he attempts to enforce them in an action. But such conditions and such state of facts are not here present. The case made by the agreed statement is, in law, merely one where the owner of land sold for delinquent taxes within the prescribed period of limitation comes into court to recover possession, and to have canceled as void tax deeds executed in pursuance of such sale. So that, as between the plaintiff and the defendant, whose relation was merely that of tax purchaser and delinquent former owner, whatever be the consequences of the circumstance that defendant's tax deeds were recorded less than five years from the date of the record of plaintiff's tax deeds, the latter's rights are not thereby concluded if he acts, as he has done here, within the time which the statute of limitations gives him for the purpose

of having the defendant's defeasible title under the later tax deeds nullified.

As all the tax deeds of plaintiff and defendant, though valid on their face, were void, as the parties concede, the learned trial judge was of the opinion that neither those held by plaintiff nor those held by defendant operated to divest the title of Survant, the patentee. Hence he decided that the quitclaim deed from Survant vested the title in defendant. He was right with respect to defendant's tax deeds, but wrong as to plaintiff's. The latter, as we have held, divested Survant's title, and by aid of the statute of limitations vested it in plaintiff. The quitclaim deed was therefore abortive.

The judgment must be reversed and the cause remanded with instructions to vacate the same and enter judgment for plaintiff for possession according to the prayer of his complaint.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.