Argued March 3, decided March 22, 1910.

## DUFUR *v.* HEALY.

[107 Pac. 692.]

TAXATION—SALE—PROOF OF PROCEEDINGS.

1. Where a tax sale is postponed from a date when an old law is in force to a date when a new law becomes operative, if the certificates of sale are insffective under the old law, but are effective under the new, the burden of proof, in a suit to recover possession of property held under such tax sale, does not shift to plaintiff on defendant's introducing in evidence a tax certificate, but he must prove, to overcome plaintiff's title, which was good except for the tax sale, that all steps necessary to obtain jurisdiction in the tax sale were taken, and this burden is not sustained by introducing a deed from the county, which purchased the property at. the tax sale, although General Laws 1901, p. 73, § 5, provides that a tax deed shall be conclusive evidence of the regularity of proceedings, except as to certain jurisdictional matters enumerated, as the deed from the county was not a tax deed.

TAXATION—SALE OF LAND—ACTION TO RECOVER LAND SOLD—LIMITATIONS.

2. Sections 3128, 3146, B. & C. Comp., limit the time within which an action to recover lands sold for taxes can be begun to three years from the record of the tax deed. Acts 1901, p. 73, § 5, and Section 3135, B. & C. Comp., limit the time for such an action where property has been sold to counties or other public corporations to two years from the record of the deed. *Held,* that, where the purchaser under a tax sale has been in possession but two years, and there is no evidence that his

deed has been placed on record, limitation has not run, although three years have elapsed between the date of the sale and the beginning of the action.

MR. JUSTICE KING, dissenting.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE KING.

This is an action by E. B. Dufur against D. Healy to recover possession of lots 7, 8, and 19, in block 1, Mt. Tabor Place Addition near East Portland. Defendant admits title in plaintiff to lot 8, but defends as to the other lots on the ground that the plaintiff, prior to the commencement of this action, had been divested of title to the property, by reason of a sale thereof for taxes for the year 1900. At the trial it was stipulated that prior to the assessment and levy of taxes for the years 1899 and 1900 the plaintiff was the owner in fee, and entitled to the immediate possession of the property described, and is such owner, unless his title has been divested by the sale of the property for taxes for those years, and by subsequent purchase by defendant from the county under the act of 1901 (Gen. Laws 1901, p. 71), permitting sales by the county of lands purchased by it at tax sales; that no redemption was ever made from such sales, and the validity of which sales is not conceded. This was supplemented by the testimony of plaintiff, to the effect that he was the owner of the property at the time of the trial, unless his title thereto became forfeited in the manner indicated; that the lots described are not within the limits of any incorporated city or town, and that defendant, for more than two years prior to the institution of the action, had been and was in actual possession of the property.

Defendant offered in evidence a certified copy of certain lines of the tax roll of Multnomah County for 1900, which, in the column headed "Value of City and Town Lots," showed lots 7 and 19 to have been assessed at $20 each, the tax on each being 53 cents. This was followed by the introduction in evidence of a certified copy of the sheriff's

certificates of sale of lots 7 and 19, disclosing as to each that it was: "Assessed by the assessor of Multnomah County, State of Oregon, for county, state, school and military and special school district taxes for the year 1900, and city taxes for the year 1901, to Richard Clinton, and a tax thereon was levied by the board of county commissioners of said county at the February term thereof, in the year 1901, which tax was extended upon the assessment roll of said county for said year, and amounts to the sum of $0.53 as by said tax roll may appear; and whereas a warrant was attached to a transcript of said roll in the name of the State of Oregon, and under the hand of the clerk of the county court and the seal of the county court of said county, commanding the sheriff and tax collector of said county to collect the taxes as therein specified, and said roll with such warrant attached, together with a certificate of the several amounts apportioned to be assessed upon the taxable property in said county, for state, county, school and military and special school district and city purposes, was delivered to the sheriff of said county; and whereas, after due proceedings under and pursuant to said warrant, the aforesaid taxes on the real property above described were and remained unpaid, and said sheriff was unable to collect the same without a sale of said real property, and thereafter a further warrant was issued and delivered to said sheriff by the clerk of the county court of said county, under his hand and the seal of the county court, in the name of the State of Oregon, commanding the said sheriff to collect the said unpaid and delinquent taxes by levy on said lands and real property, if no sufficient personal property be found, as by said warrant may appear, and whereas no personal property being found out of which to make said taxes."

The remainder of the certificates is in the usual form, and shows the property to have been advertised for sale on November 26, 1901, but postponed from time to time

until January 2, 1902, when the tax sale was made and the property purchased by Multnomah County, as the highest bidder therefor, for $3.31, covering taxes and costs, subject to the right of redemption, etc. A deed, dated September 15, 1904, was then introduced purporting to have been executed by T. M. Word, as sheriff, to the plaintiff herein, showing a sale to plaintiff of the land by Multnomah County, for the consideration of $37.36, under Section 3 of the act of 1901 (Gen. Laws 1901, p. 71), providing for the sale by the sheriff of lands bid in by the counties for delinquent taxes. The cause was tried before the court without a jury, and, based upon evidence in substance as above, a judgment was entered for defendant, from which plaintiff appeals.          Reversed.

For appellant there was a brief and an oral argument by *Mr. Hayward H. Riddell.*

For respondent there was a brief and an oral argument by *Mr. Ephraim B. Seabrook.*

Mr. Justice King delivered the opinion of the court.

1. It is maintained by the plaintiff that it is incumbent upon defendant, in order to overcome the admitted title in him, to show that all the proceedings essential to jurisdiction, in making the sale for taxes, were complied with, and that the deed from the sheriff to defendant, and certificates of sale from the sheriff to the county, together with the part of the tax roll, introduced in evidence, is inadequate for that purpose. Defendant argues that under Section 3123 of B. & C. Comp., a certificate of sale constituted *prima facie* evidence of title in him, thereby shifting to plaintiff the burden of establishing that the necessary jurisdictional proceedings, relating to the sale for taxes, were not complied with. "The well-established rule," says Mr. Justice Eakin, in *Ayers* v. *Lund,* 49 Or. 303, 305 (89 Pac. 806, 808: 124 Am. St. Rep. 1046), "when not modified by statute, is that the burden of proof

is on the holder of the tax title to maintain his title, by affirmatively showing that the provisions of the law have been complied with;" further observing that "by Section 3127, B. & C. Comp., in case of a tax sale to a private purchaser, the deed is made *prima facie* evidence that the provisions of the law have been fully complied with. But this does not apply to a purchase by the county, as no deed is provided for in such case."

In the case at hand the purchase was not made by the defendant as a private purchaser directly at a sale for taxes, but through the county; the county holding a certificate therefor, which certificate was evidently intended to be issued under Section 3123 of B. & C. Comp., while the deed held by defendant was issued under Section 3 of the act of 1901 (Gen. Laws 1901, p. 72: B. & C. Comp., § 3123). This section, it is contended, makes the certificate *prima facie* evidence that the property described therein was subject to taxation at the time it was assessed; that the taxes mentioned therein were not paid before the certificate was issued, and that all of the acts and proceedings, requisite to the validity of the sale of the property described, have been duly performed. But it is urged in response that this position is unsound, for the reason that the property was sold for taxes levied prior to December 1, 1901, and that Section 37 of the act of 1901 (Gen. Laws 1901, p. 256) expressly limits that act to instances involving the collection of taxes thereafter levied, making it essential that taxes levied prior to the passage of the act should be collected under the law then in force, under which law no certificate, showing a sale to and a purchase by the county, was required. This provision injects into the controversy much doubt as to whether the certificates involved were entitled to be given the *prima facie* effect claimed for them. The writer is of the opinion that it was not contemplated by the act of 1901 that the issuance of the certificates mentioned therein should con-

stitute one of the steps essential to the collection of taxes;
that, under either act, the title to the property, when bid
in by the county, passed without the issuance of a certifi-
cate, the certificate constituting a muniment of title only;
and that the clause, "so far as it relates to the collection
of taxes heretofore levied," contained in Section 37 of the
1901 act, did not include, nor was it intended to include,
in fact or in effect, the part of the act with reference to
the issuance of certificates and *prima facie* effect thereof.
And the sale having been made after December 1, 1901,
the law, so far as related to the issuance of certificates
and legal effect thereof, if intended to require an issuance
thereof to the counties, the same as to other purchasers,
was applicable thereto; which view, if acceded to by the
majority, would necessitate an affirmance of the judgment
of the trial court.   But the majority are of the opinion
that the sale, having been postponed from time to time
from a date when the old law was in force, although made
after the new law became operative, it was only necessary
that all the proceedings conform to the requirements of
the previous law, making the certificates ineffective for
any purpose, and placing defendant in the same position,
in reference thereto, as if the certificates to the county had
not been issued; from which it must follow that the cer-
tificates offered in evidence did not shift to plaintiff the
burden of establishing the invalidity of the tax sale, but,
so far as this element was concerned, left it incumbent
upon defendant affirmatively to show that the provisions
of the law were complied with.   Under this view, the
question remaining is whether the introduction in evi-
dence of the deed given by the county to defendant had
the effect of casting upon plaintiff the onus of establishing
that a sale under a tax proceeding to the county was void.
If so, defendant must prevail; otherwise, the *prima facie*
showing of title in plaintiff has not been overcome, and
the judgment is erroneous.   In *Ayers* v. *Lund,* it is, in ef-

fect, held, as hereinbefore stated, that a tax deed is *prima facie* evidence that the provisions of the law have been fully complied with, when the sale is to a private purchaser, but, as no deed is provided in a case where a sale is to the county, the rule thus invoked is inapplicable. In Section 5 of the act of 1901 (Gen. Laws 1901, p. 73), it is provided that the deed given thereunder shall be conclusive evidence of the regularity of and existence of all proceedings necessary to pass title to the lands conveyed therein, and of the title in the grantee, except as to certain jurisdictional steps therein enumerated. Under the rule announced in *Martin* v. *White,* 53 Or. 319 (100 Pac. 290), the conclusiveness of deeds to property growing out of tax sales is limited to irregularities only. But regardless of that feature this deed could not be held to come within the clause specified in Section 3127, B. & C. Comp., for this deed is in no sense a tax deed, but grows out of a sale directly from the county. It follows, in the absence of a statute, that, under any rule of construction, defendant's deed cannot be held *prima facie* evidence of anything more than is expressed therein, which does not extend to the proceedings by which the county secured its title, and it is accordingly inadequate to relieve defendant of the burden of affirmatively establishing that the provisions of the law have been fully met.

2. It is next argued that, since plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of the defendant, he must necessarily fail, for the reason that, under Sections 3128, 3135, 3146, more than three years having elapsed after the date of the sale before this action was instituted, the plaintiff is barred from maintaining the action. It has been held by this court that the effect of these provisions is limited to cases where the defendant has, for the statutory period, been in the actual possession of the property, in which event "the title thus acquired is in the nature of a pre-

scriptive title." But, even then, the deed under which the possession is held "must be sufficient on its face to constitute color of title. * * But when the tax proceeding is void, and the tax sale purchaser is not in possession, it is beyond the power of the legislature to transfer to the purchaser the title of the owner by lapse of time alone." *Martin* v. *White*, 53 Or. 319 (100 Pac. 290). In the case before us it is not shown or contended that this possession existed for the statutory period; possession for two years only being established. Nor can it be said that this was ample time to come within section 5, p. 73, of the act of 1901, for the deed in evidence does not appear to have been placed of record, from which time the limitation there provided begins.

From the views of the majority thus announced, it follows that the judgment of the circuit court must be reversed, and the cause remanded for a new trial; and it is so ordered.                                    Reversed.