Argued March 19: reversed June 10; argued on rehearing November
5, 1941; former opinion reversed and judgment of circuit court
affirmed March 10, 1942

## NATIONAL SURETY CORPORATION *v.*
## SMITH ET AL.

(114 P. (2d) 118, 123 P. (2d) 203)

Before KELLY, Chief Justice, and RAND, BAILEY,
BELT and ROSSMAN, Associate Justices.

*Robin D. Day,* of Salem, for appellant.

*Roy Harland,* of Salem (W. C. Winslow, of Salem, on the brief), for Smith.

*Walter H. Bell,* of Stayton, and *Carson & Carson,* of Salem, for Ogle.

ROSSMAN, J. This is an appeal from a judgment of the circuit court in favor of the defendants and entered in an ejectment action. In making that statement we realize that the complaint is couched in language suitable for a suit in equity, that the prayer seeks equitable relief, and that the disposition of the cause is stated in a paper entitled "decree." Possibly the plaintiff, when the complaint was prepared, deemed that its cause was within the purview of § 9-1001, O. C. L. A. But, since the property described in the complaint was in the defendants' possession when the action was begun, § 9-1001 did not authorize the institution of this proceeding. We are satisfied that this is an action of ejectment and nothing else.

The defendants are seven in number, five having the name of Smith and three the name of Ogle. The Smiths and the Ogles filed separate answers. Both answers deny the paragraph of the complaint which alleges the plaintiff's ownership of the property. The answer of the Smiths, besides making that denial, alleges that defendants Guy H. and Roy E. Smith purchased the property December 28, 1935, from the sheriff of Marion county and that they received a deed of conveyance December 31, 1935. They further allege that immediately after making the purchase the two Smiths assumed actual, adverse and exclusive possession of the property and that the possession was maintained to and including the time when the answer was filed.

Those averments are followed by a further defense based upon the Short Term Statute of Limitations which protects tax sales. The answers seek no affirmative relief. The reply denies the new matter alleged in the answer. That denial is followed with averments which describe (1) some probate proceedings through which the plaintiff claims it acquired title to the property; (2) a foreclosure suit for delinquent taxes instituted by Marion county in 1934 and a subsequent sale of the foreclosed properties, including the tract with which we are concerned; and (3) irregularities in the foreclosure suit and subsequent sale which the plaintiff claims rendered the latter void.

As already indicated, the circuit court's disposition of this action is stated in a writing entitled "decree." We are satisfied that the paper was a judgment and shall so deem it notwithstanding its misnomer. It dismissed the action.

Apparently due to a belief that the writing just mentioned was a decree, its author omitted the preparation of any findings whatever, either general or special. None of any kind was entered. The total absence of findings constitutes error: *State ex rel. v. Bassett*, 166 Or. 628, 113 P. (2d) 432 (decided May 13, 1941).

The evidence received during the trial tended to disclose the following concerning the plaintiff's claim of title.

April 25, 1939, the sheriff of Marion county executed and delivered to the plaintiff a deed of conveyance to this property which had its origin in the following circumstances. In 1926 the then owners of this property signed a promissory note and, in order to secure its payment, executed and delivered to the payee a mortgage which described the property. Later, the mort-

gagee died intestate and two individuals by the name of McArthur were appointed administrators of his estate. After their appointment they instituted a suit to foreclose the mortgage, and in due time a decree of foreclosure was entered. Still later the sheriff sold the property and after confirmation of the sale issued to the McArthurs a sheriff's certificate of sale. About that time it was discovered that the McArthurs had been neglectful of their official duties and that through their neglect the estate had suffered a loss of $3,900. At that point the McArthurs were discharged and the Ladd & Bush Trust Company was appointed administrator de bonis non. Upon those developments the plaintiff, as surety upon the McArthurs' administrators' bond, paid the trust company, as administrator, $3,900. Upon a motion made by the new administrator the court entered an order which awarded to the plaintiff by subrogation the rights which the estate possessed against the McArthurs. At the same time the latter assigned to their successor the aforementioned sheriff's certificate of sale and then the trust company, as administrator, assigned the certificate to the plaintiff by means of a writing which said that the assignment was made "pursuant to an order of the County Court." The following day the sheriff executed and delivered to the plaintiff his aforementioned deed. It recited at length the circumstances out of which it issued, including a statement that the assignment of the sheriff's certificate of sale to the plaintiff by the administrator was made "pursuant to an order of the Court."

Some months before the complaint was filed eighteen individuals signed, executed and delivered to the plaintiff a quitclaim deed which described this property. The relationship of the eighteen grantors to the title is indicated only by the facts which we shall now

mention. Many of them have the same name as individuals described as next of kin and heirs at law of the deceased in the order which appointed the administrators. All of the persons mentioned in that order signed the deed. Likewise two of the grantors have the same name as two persons mentioned in another order as heirs of the deceased. Those two are also mentioned in the order appointing the administrator. The defendants' brief, in referring to the quitclaim deed, says: "All the heirs did not sign the deed." That statement inferentially indicates that those who signed were heirs. The above circumstances, in our opinion, justify a belief that those who signed the quitclaim deed were heirs of the deceased. The sufficiency of the quitclaim deed as an instrument of conveyance is not questioned by the defendants. Their only objection to the deed is the one just quoted, "All the heirs did not sign the deed." The face or premises of the deed contains the names of the three grantors and their spouses, who however, did not sign the instrument. The reason for the missing signatures is not disclosed by the evidence.

Due to the fact that there is in the record brought before us no order authorizing the administrator to assign the sheriff's certificate of sale to the plaintiff, we shall ignore the assignment and the sheriff's deed. Our purpose in having mentioned the plaintiff's payment of the loss sustained by the estate through the McArthurs' neglect of duty and the subsequent order made by the court, was to indicate that there were circumstances which could properly induce the heirs to sign the quitclaim deed. If the latter did not convey to the plaintiff the title of all the heirs, it at least made the plaintiff a tenant in common with those who did not sign: § 70-205, O. C. L. A. A tenant in common may maintain an action of ejectment for recovery of posses-

sion of the property against strangers to the title: *LeVee v. LeVee*, 93 Or. 370, 181 P. 351, 183 P. 773; 14 Am. Jur., Cotenancy, p. 160, § 95; 62 C. J. Tenancy in Common, p. 563, § 248. Therefore, the plaintiff had sufficient title to warrant its institution of this action.

We shall now state the facts developed by the evidence concerning the defendants' alleged title. December 28, 1935, defendants Guy H. and Roy E. Smith purchased this property from the sheriff of Marion county. The deed to them is dated December 31, 1935. It is valid on its face and mentions in one of its Whereas clauses a public sale of real estate held December 28, 1935, pursuant to a tax decree made and entered November 20, 1935. The property is a 30-acre tract enclosed by a fence, and at the time of its purchase the Smiths wired shut the gates which gave access to the property and in other ways assumed possession of it. A few days later they rented the tract to Samuel J. Ogle, who is one of the defendants. June 4, 1936, the two Smiths and the three Ogles signed an agreement whereby the Ogles agreed to buy the property for a consideration of $1,000. The Ogles have been in possession of the property since they rented it. Before beginning this action the plaintiff tendered to the defendants the amount paid to Marion county for the property, the amounts paid in subsequent years for taxes and twelve per cent interest upon all payments. The offers were rejected. The complaint was accompanied by a written tender of the same amounts. No one questions the sufficiency of the amounts.

About three months after judgment had been entered in favor of the defendants, the several parties to this action, acting through their attorneys, entered into a written stipulation and filed it with the pleadings.

The stipulation bears the title of the circuit court and of this action. It is a part of the transcript on appeal and a copy of it appears in the abstract of record. Omitting the opening paragraph and the signatures at the close, the remainder of the writing reads:

"'* * * and stipulates as follows:

"That on June 13, 1935, Marion County, State of Oregon, commenced a suit against Max Highstone and numerous other persons in the Circuit Court of the State of Oregon, for Marion County, to foreclose a certain certificate of delinquency issued on November 24, 1934 to said county for unpaid taxes. In this suit there were over 1,100 parties and parcels of real property involved, including the parcel of real estate involved in this action, and which is the same parcel of real property described in plaintiff's complaint. Certain proceedings were had in such foreclosure suit and on November 20, 1935, a judgment, decree and order of sale were entered. This judgment, decree and order of sale provided in part that the property involved in this action should be sold by A. C. Burk, as sheriff of Marion County, Oregon, for the nonpayment of such delinquent taxes. On December 21, 1935, A. C. Burk, as sheriff of Marion County, Oregon, offered for sale the several parcels of real property referred to in said foreclosure suit, including the property set out in plaintiff's complaint. On said date defendants Guy H. Smith and Roy E. Smith bid upon said premises and paid to the sheriff $174.74, and thereafter received a deed to the same from the said sheriff.

"It is further stipulated that the suit commenced by Marion County, State of Oregon, against Max Highstone and numerous others in the Circuit Court of the State of Oregon, for Marion County, to foreclose certain certificates of delinquency is the same suit passed upon by the Supreme Court in the case of Smith v. Carlson, appealed from the Circuit Court of the State of Oregon, for Marion County, L. G. Lewelling, Judge, argued and submitted on September 15, 1938, the opin-

ion being written by Mr. Justice Bean, 160 Or. 282, and that the errors with reference to cost bill exist in this case.

"It is further stipulated that the administrators of the estate of Robert Poinsett or his heirs were not served by Marion County, Oregon, in that suit against Max Highstone and others, but that Mr. Socolofsky, the former owner, was served.

"It is finally stipulated that because of this stipulation a certified copy of the proceedings had in that certain suit referred to herein by Marion County, Oregon, against Max Highstone and numerous others need not be included among the exhibits in this suit, but should the Supreme Court desire to see said file the same can be withdrawn by any of the attorneys in this matter and taken to the Supreme Court for examination."

It will be observed from the foregoing that reference is made to a previous decision of this court, and that the reference is accompanied by a statement that "the errors with reference to cost bill exist in this case."

In the decision to which the stipulation refers (*Smith v. Carlson*, 160 Or. 383, 85 P. (2d) 1028), the facts concerning the delinquent-tax foreclosure suit and the subsequent sale, through the combined means of which the tracts of land involved in the Smith suit as well as in the instant action were sold, are mentioned in detail. Since the name of the plaintiff in that suit (Guy H. Smith) is the same as that of one of the defendants in this action, we infer that this defendant was the plaintiff in that cause. A reading of *Smith v. Carlson* shows the following. It was a suit to quiet title to a tract of land which Smith purchased at the sale above mentioned. The sheriff sold that tract, as well as the one involved in the instant action, as the result of a decree entered in an omnibus delinquent-tax foreclosure suit entitled *Marion County v. Max Highstone*

*et al.* After Smith received his deed he brought the suit just mentioned against Carlson, the defaulted taxpayer. Carlson's answer was a general denial followed by averments of irregularity in the tax foreclosure suit. At the trial it developed that in the Highstone suit $2.50 costs were assessed against each item of property, concerning which this court (in *Smith v. Carlson*) said:

"There being over 1,100 parcels of property if a charge of $2.50 is made for each parcel, it would amount to $2,750 for publishing a summons the true charge for which was $1,826.  *  *  *  The costs of $2.50 taxed against the defendant taxpayers' property were excessive. The foreclosure proceeding as to it is void.  *  *  *"

As a result, the decision held that the sale and deed were void.

We now quote from the defendants' brief (in this case) the following:

"We concede that the sale under which the deed was given is voidable.  *  *  *  The deed in the instant case is regular on its face, is not void on its face. The only reason it is void is by virtue of irregularities in the foreclosure proceedings."

During the oral argument defendants' counsel, as disclosed by the transcript of this court's reporter, said:

"*  *  *  Be that as it may, and what counsel says about the objection in the cost bill, referred to in his brief, the whole position of the respondents, and all of the respondents, is that even though that tax foreclosure proceeding was void, that by virtue of the fact that the respondents were in possession of the property and held it for a period of time in excess of the statute of limitations, that we have a title, and our court says it is in the nature of a prescriptive title.  *  *  *  We do not say we acquired title to the property under what

our Supreme Court said, (apparently referring to Smith v. Carlson) but our Supreme Court held in Martin v. White, 53 Or., and also in other cases that in an exact situation, even where the sale is void, the defendant's are entitled to recover * * *. Then the court says that is in the nature of a prescriptive title * * *.''

At that point defendants' counsel read a sentence from *Martin v. White*, 53 Or. 319, 100 P. 290, after which he said:

''That is our whole position. In this case they held the tax proceeding to foreclose was void, and then the court said: 'As an illegal tax title is a nullity, it cannot of itself divest or affect the true title in any way, and the true owner cannot be lawfully compelled to incur expense or take active measures to get rid of it unless he sees fit. But if he becomes ousted, whether by a pretended tax title holder or by any adverse claimant, he can only secure the enjoyment of his rights by active measures, and the party in possession may then rely on such possession until it is lawfully assailed by suit or otherwise within the period of limitation.' Following out our contention on that, the tax deed given to the tax purchaser at the sale was sufficient upon its face and it constituted color of title and this deed was executed and delivered to the defendants Smith within the last day or two of December, 1935. They immediately recorded it on the same date, and the fore part of January, 1936, they took possession of the property, and that was the basis on which the matter was presented to the lower court and that is the basis on which this appeal has been taken.''

It is clear from the recitals of the stipulation and the admissions made in the defendants' brief, repeated in the oral argument, that the defendants' deed is void. Being void, it, of course, conveyed no title to the Smiths.

Although the stipulation was filed after the entry of the judgment, we believe it is fair to infer from the

statement made by the defendants' counsel in his argument before this court, "that was the basis on which the matter was presented to the lower court" that the invalidity of the defendants' deed was conceded in the circuit court. The same inference seems warranted by the language of the defendants' brief, quoted in a preceding paragraph. In other words, the stipulation does not bring before us facts withheld from the trial judge, but merely gives us access to the same facts.

Section 69-845, Oregon Code 1930, said:

"Every action, suit or proceeding which may be commenced for the purpose of determining the validity of a sale of land for taxes, or to quiet the title against such sale or to remove the cloud thereof, or to recover the possession of land so sold, * * * shall be commenced within three years from the date of the sale for taxes by the sheriff, and not otherwise, except in cases where the assessment and taxes for which the land was sold or certificate issued had been paid before the sale, or the land redeemed after the sale, or the lands were not subject to taxation at the time the same were assessed; * * *"

Chapter 470, § 6, 1937 Session Laws, amended the part of the law just mentioned by substituting "two years" for "three years" thus shortening the limitation period of two years. Chapter 485, § 23, 1939 Session Laws, repealed the amended statute. Section 110-920, O. C. L. A., being 1939 Session Laws, chap. 485, § 20, provides for a two-year limitation period.

It will be recalled that the Smiths bought the property December 28, 1935, and received a deed December 31, 1935. The complaint was filed in April, 1939, but it did not include the Ogles as parties. The amended complaint, which included the Ogles, was filed June 13,

1939. Accordingly, more than three years had passed after the Smiths purchased the property and before this action was commenced. Therefore, our Short Term Statute of Limitations, which was invoked by the answer, was available to the defendants. It may be that the answer would have justified a rejection of all evidence tending to show the invalidity of the tax foreclosure decree, sale and deed. Be that as it may, the invalidity of the deed is admitted, and the cause is before us upon an agreement that the instrument is void. That instrument is now relied upon merely as color of title sufficient to usher in a prescriptive title.

From the foregoing it is observed that the plaintiff held a deed which made it a tenant in common with others, and that the defendants were in possession of the property under a deed, valid upon its face, but void as a matter of law.

The defendants believe that § 69-845 does something more than merely bar actions and suits which are brought after the limitation period; they believe that it is a prescriptive statute. Such being their construction of it, they argue that (1) although their deed is void, it served as color of title; (2) they had hostile, adverse possession for a time longer than the limitation period; and (3) therefore, they acquired title by prescription.

In support of their contention that § 69-845 yields title by adverse possession to one who enters under an invalid tax deed and holds possession under claim of ownership for the limitation period, the defendants cite *Dufur v. Healy*, 56 Or. 49, 107 P. 692; *Martin v. White*, 53 Or. 319, 100 P. 290; and *Pillow v. Roberts*, 54 U. S. 472, 14 L. Ed. 228.

It is true that *Martin v. White* contains statements, repeated in part by quotation in *Dufur v. Healy*, which inferentially support the defendants' contentions; but neither of those decisions sustained a tax title. Both decisions held the tax-title deeds invalid and sustained the title of the delinquent taxpayers. In the Martin case neither party had possession; in the Dufur case the tax-title purchaser had possession but for less than the limitation period. The statement made in the Martin decision, upon which the defendants rely, was dictum. Its repetition in the Dufur decision was likewise unnecessary. The excerpts from the Martin decision which the defendants quote were made after the opinion had pointed out that the tax deed was void and had stated, "but, the sale to the county being void, the deed alone cannot start the statute of limitations running." The opinion thereupon added that some decisions hold that a deed valid upon its face is a complete bar after the expiration of the limitation period, but that for a deed void upon its face to have such effect it is necessary that the grantee have possession. In commenting upon that legal principle, the court made the observations and employed the quotations upon which the defendants rely. The Dufur decision, in which the purchaser failed to prove the validity of his deed, cited *Martin v. White* and quoted one of its paragraphs in rejecting the purchaser's claim that the Short Term Statute of Limitations protected his deed. It will be recalled that he had been in possession for less than the period required by the statute. *Pillow v. Roberts*, supra, is only one of several decisions by the Federal Supreme Court which applied statutes of this general kind. That tribunal, of course, accepts the state court's

interpretation of the local act. Statutes phrased differently from the one involved in the Pillow case received different treatment by the federal supreme court. We deem it needless to cite the decisions.

In a preceding paragraph we quoted a part of the oral argument of the defendants' counsel. The quotation which he employed and which begins "As an illegal tax title" was the language, not of this court, but of *Groesbeck v. Seeley*, 13 Mich. 329. It was quoted in the Martin decision. The Michigan statute with which the Groesbeck decision was concerned read:

"Any description of land bid off to the state at the annual sales, which shall have remained undisposed of for five years from the date when it was so bid off, shall vest in the state an absolute title in fee simple, and no suit of rejectment shall be commenced to recover said lands or title thereto, (or be) sustained thereafter by any person claiming or holding possession or title through any other source;   *   *   *"

The court held the statute invalid. It said:

"This statute does not purport to be a limitation law. It is designed by its express terms to deprive persons of their titles whether in possession or not, by mere lapse of time."

Having so described the act, the decision shortly employed the language which the defendants' counsel read from the Martin decision where it is repeated by quotation. But it will be seen that the Michigan statute was neither one of limitation nor of prescription, and that it was in truth invalid. The Michigan court's language upon which the defendants rely concerned adverse possession as that term is commonly used when prescriptive statutes are under consideration.

We have carefully read not only the four above-cited decisions, but many others. Very little, if anything, is gained by taking note of the general statements found in the decisions to the effect that a void tax deed, if accompanied by possession for the requisite period of time, yields title. Statements to the direct opposite can be readily found. Some courts hold that a void tax deed cannot start the running of the limitation period, others take the opposite view. Many of the decisions differentiate in the application of the statute between deeds void on their face and others in which the invalidity is shown by an examination of the proceedings which preceded the execution of the deed. The statutes differ in their provisions and the several courts, due to local peculiarities in the development of taxation, do not always employ the same interpretation. In fact, a given court at times varies in the construction and application of its statute. Statements of the kind which we have just made can be found in many of the decisions and textbooks. We quote the following from an annotation in 23 L. R. A. (N. S.) 1102, which accompanies *Florida Finance Co. v. Sheffield*, 56 Fla. 285, 48 So. 42, 16 Ann. Cas. 1142:

"But few jurisdictions have a special statute of limitations which begins to run from the time of possession. It would seem from the cases gathered that the question here annotated is not altogether free from difficulties, and even within the same jurisdiction presents some differences of opinions."

The same observation appears in many other annotations and in some of the decisions.

It is not unworthy of notice that many of the statements which declare that Short Period Statutes of Limitations are prescriptive in character appear in

decisions which rejected the tax title purchaser's alleged rights. Many of them failed to take note of the differences in the various statutes; see, for instance, the annotation appearing at page 550 of 22 A. L. R.

We now return to our statute. We have already quoted the words of § 69-845 and have mentioned the fact that it was amended in 1937 and replaced by another act of substantially the same kind in 1939. Since the 1937 amendment introduced a change of no consequence to our present purposes, we have been referring to § 69-845 as though it remained unamended. We shall continue to do so. It will be recalled that § 69-845 does not protect all tax sales. Roughly speaking, it excludes instances where the tax was paid, the land was redeemed or the property was not subject to taxation. Evidently it rejects sales in those instances as void and, therefore, refuses to afford protection to them.

By reverting to the language of § 69-845, it will be seen that it enables a tax-title purchaser to defend his title whether he have possession or not, and whether he is plaintiff or defendant. Again, § 69-845, by rendering it possible to plead the statute in "every action, suit or proceeding * * * for the purpose of determining the validity of a sale of lands for taxes, or to quiet the title against such sale or to remove the cloud thereof, or to recover the possession of lands so sold * * *", does not limit the application to proceedings for the recovery of possession. Statutes which concern themselves with possessory actions only, by necessary inference, demand that the tax purchaser be in possession of the defaulted property. But our act does not demand that the purchaser have possession. It is equally applicable if the foreclosed taxpayer is in possession.

We now quote from our general Statute of Limitations, § 1-202, O. C. L. A.:

"The periods prescribed in the preceding section for the commencement of actions shall be as follows:

"Within ten years, action for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of such action; *   *   *"

Most of the judicial statements which declare that a defective tax deed, if accompanied by adverse possession for the limitation period, confers vested rights or title were made in states having short term limitation statutes which demanded that a purchaser have possession. In that respect they have similarity to § 1-202, O. C. L. A., just quoted. For instance, General Statutes of Florida, 1906, § 591 (see *Florida Finance Co. v. Sheffield,* supra,) says:

"When the purchaser of land at a tax sale goes into actual possession of such land, no suit for the recovery of the possession thereof shall be brought by the former owner or claimant, his heirs or assigns, or his or their legal representatives for the recovery of the possession of such land, unless such suit be commenced within four years after the purchaser at such tax sale goes into possession of the land so bought; *   *   *"

The Illinois act (see p. 552 of 22 A. L. R.) Jones Illinois Statutes, 107, 264 reads:

"Every person in the actual possession of land or tenements, under claim and color of title made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such land or

tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent * * *.''

The Michigan statute, as quoted in *Pence v. Miller,* 140 Mich. 205, 103 N. W. 582, follows:

"No sale of any lands or deed made by the auditor general under the provisions of this act shall be set aside or annulled by any court of this state after the purchaser, his heirs or assigns, have been in actual and undisputed possession of such lands so sold or conveyed for a period of five years from the date of such purchase or deed. * * *''

The difference between § 69-845, Oregon Code 1930, and § 1-202, O. C. L. A., is evident. The same is true of the difference between § 69-845 and the statutes of Florida, Illinois and Michigan just quoted. Those three statutes and § 1-202, unlike § 69-845, are not self-sufficient. They must unite with possession in the favored party in order to yield title to him. Such statutes and others of like kind, as a matter of public policy, prefer a title claimant who has maintained his possession to another who, over the limitation period, has done no more than to possess his title papers. The purpose of closing the judicial ear to him is not for his punishment, but for the protection of the person in possession. For the latter's protection the law indulges in, or rather creates, presumptions favorable to his claim of title. See § 2-407, subd. 38, O. C. L. A. The purpose of statutes like § 69-845, which do not concern themselves with possession, is quite different. They are auxiliary to the taxation and revenue measures of the state. Although the law of adverse possession had its origin in the remote past before government made provision for the recording of title instru-

ments, laws like § 69-845 endeavor to cut through the maze of technicality which has developed around sales and deeds based upon defaulted taxes. They are intended to spur on the defaulted taxpayer to a prompt assertion of his claims of invalidity, if he has any. In order to coerce him into speaking promptly, they threaten him with silence if he neglects to assert his rights, either as plaintiff or as defendant, within the limitation period. In this way they close the period in which a defaulted taxpayer can pay his delinquent sums, and help to establish title in some person to the derelict property so that it will return to the taxation rolls as promptly as possible. Thus it is seen that the inception of the law of adverse possession and of acts like § 69-845 was different, and it is also seen that the purpose of the two laws is not the same.

The above quotations from the Florida, Illinois and Michigan statutes were not intended as an indication that there are no other short period statutes of limitation, or that all others are similar to those three. The Washington statute (§ 162 Rem. Rev. Stat., § 8167 P. C.) follows:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed;  *  *  *."

Although we have carefully searched the Washington Reports we have found no decision which deemed this statute as prescriptive in character, though *Ward v. Huggins*, 7 Wash. 617, 32 P. 740, 1015, 36 P. 285, contains a brief dictum to that effect.

■ It is our belief that § 69.845 and its successors are not of a prescriptive character. They are statutes of limitation only. They serve as shields and are not retrievers. As shields they render it impossible for the holder of the better title to prove it. That is their sole function. They do not reward the tax purchaser with a perfect title by presuming in his favor a lost grant. The protection which they afford is not dependent upon possession; and the latter, if present, does not alter the nature of the statute nor increase the protection it affords.

■ The above being our construction of the statute, it follows that the defendants' rights were dependent solely upon the validity of their deed; and, of course, when they conceded that under this court's holding in *Smith v. Carlson*, supra, the deed was void, it followed that the defendants had no title to the property.

The cause will be remanded to the circuit court with instructions to enter judgment for the plaintiff. The sums tendered to the defendants in the aforementioned writing should be paid to them.

RAND, J., concurs in the result.

BELT, J., did not participate.

---

BAILEY, J. (specially concurring). In view of the fact that the tax foreclosure proceedings here involved were held void by this court in *Smith v. Carlson*, 160 Or. 383, 85 P. (2d) 1028, I concur in the result announced in the opinion of Mr. Justice ROSSMAN. I particularly concur, also, in the construction of § 69-845, Oregon Code 1930, as a statute of limitation and not of prescription.

Argued on rehearing November 5, 1941; former opinion reversed
and judgment of circuit court affirmed March 10, 1942

ON REHEARING

(123 P. (2d) 203)

Before KELLY, Chief Justice, and BELT, BAILEY,
LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Robin D. Day,* of Salem, for appellant.

*Roy Harland,* of Salem (W. C. Winslow, of Salem,
on the brief), for respondents Smith.

*Walter H. Bell,* of Stayton, and *Carson & Carson,*
of Salem, for respondents Ogle.

*Hesse & Franciscovich,* of Astoria, amicus curiae.

LUSK, J. The case is before us on rehearing.

■ The facts may be thus briefly restated: The
plaintiff commenced this action in ejectment to recover
certain real property which had been sold for nonpay-
ment of taxes. The action was not commenced until
more than three years after the sale. The defendants
Guy H. Smith and Roy E. Smith were purchasers at
the tax sale and have been in possession of the lands
ever since the sale. Their deed is valid on its face.
The defendants Ogle occupied the lands as tenants of
the Smiths during most of that period. The defendants
Smith (hereinafter to be called the defendants) pleaded
the short statute of limitation, which provides in part
that every action to recover the possession of lands
sold for taxes shall be commenced within three years
from the date of the sale, § 69-845, Oregon Code 1930.

It was in effect stipulated by counsel on the trial that the parcel of real property in question is one of 1100 such parcels sold for taxes in the tax foreclosure suit of *Marion County v. Max Highstone et al.*; that such foreclosure proceedings were held invalid in *Smith v. Carlson*, 160 Or. 383, 85 P. (2d) 1028, as to the tract of land involved in that case because of excessive costs taxed against the property; and that the same irregularities in the proceedings exist with respect to the lands which are the subject matter of this action.

The circuit court entered judgment for the defendants; this court reversed. It was held that § 69-845 is not prescriptive in character, and the opinion concludes:

"The above being our construction of the statute, it follows that the defendants' rights were dependent solely upon the validity of their deed; and, of course, when they conceded that under this court's holding in Smith v. Carlson, *supra*, the deed was void, it followed that the defendants had no title to the property." 114 P. (2d) 118, 125.

We are satisfied that the court was right in holding in the former opinion that this is an action of ejectment and that, as is there stated, plaintiff "had sufficient title to warrant institution of this action".

This leaves but one question for re-examination, namely, the effect of the statute of limitation, which reads:

"Every action, suit or proceeding which may be commenced for the purpose of determining the validity of a sale of lands for taxes, or to quiet the title against such sale or to remove the cloud thereof, or to recover the possession of lands so sold * * * shall be commenced within three years from the date of the sale for taxes by the sheriff, and not otherwise, except in cases where the assessment and taxes for which the

land was sold   *   *   *   had been paid before the sale, or the land redeemed after the sale, or the lands were not subject to taxation at the time the same were assessed   *   *   *'' § 69-845, Oregon Code 1930.

It is entirely obvious that this case falls within the words of the statute. It is an action to recover the possession of land sold for taxes. It was not commenced within three years from the date of the sale, and it is not a case where the taxes for which the land was sold were paid before the sale, or the land was redeemed after the sale, or was not subject to taxation at the time it was assessed. Unless, therefore, some reason not disclosed by the language of the law itself prevents its application, the defendants are entitled to prevail.

The question whether the statute is one prescriptive in nature—that is, whether possession by the tax purchaser under the tax deed must accompany the running of the statutory time—may be left open. But what this court said on that subject in *Martin v. White*, 53 Or. 319, 100 P. 290, beginning at p. 326, cannot, we believe, be justly characterized as dictum. The statute there under consideration was in substance not different from the statute applicable here, though it did not contain the exceptions found in that statute. The suit was one to remove the cloud of the defendant's tax title from the plaintiff's title. It was not commenced until after the three-year period had run. The property had never been in the actual possession of anyone. The defendant pleaded the statute as a bar, but the court rejected the defense because it was a prescriptive statute, and, as stated, the property had never been in the possession of anyone. The construction thus given was the reason for withholding the protection of the statute from the defendant, and

on that phase of the case was the very heart of the decision. The facts of the case, the issues made by the pleading, called for a construction of the statute, and the court in construing it did not indulge in dictum, but announced a decision.

The doctrine of *Martin v. White* was reiterated in *Dufur v. Healy*, 56 Or. 49, 55, 107 P. 692, and the statute held not to bar the action because possession by the purchaser at the tax sale had existed for less than the statutory period. *Martin v. White* was again cited in *Harter v. Cone*, 59 Or. 43, 115 P. 1070, in which certain tax deeds were held to be void for want of authority on the part of the sheriff to make the sale. The action was in ejectment and the defendant, the purchaser at the tax sale, pleaded the statute of limitation among other defenses. The defendant contended that since he was in possession of the land at the time of the commencement of the action, though not for the full three-year period, he had constructive possession during all that time by virtue of his recorded tax deeds. The court answered this contention by quoting from that portion of the opinion in *Martin v. White* which holds that the statute is prescriptive in character. And in *Smith v. Shattuck*, 12 Or. 362, 369, 7 P. 335, it was directly held that possession under a defective tax deed for the three-year period was a good defense in an action of ejectment brought by the former owner of the land, the statute at the time reading:

"Any suit or proceeding for the recovery of lands sold for taxes, except in cases where taxes have been paid on the land redeemed, as provided by law, shall be commenced within three years of recording the tax deed of sale, and not thereafter." General Laws of Oregon 1843-1872, p. 771, § 107. (Deady and Lane Code).

The court cited *Pillow v. Roberts*, 54 U. S. 472, 14 L. ed. 228, a leading case, in which the supreme court adopted and applied a similar construction given by the Arkansas court to the statute of that state which prescribed a limitation of five years to actions against the purchaser for the recovery of lands sold for the nonpayment of taxes.

But, notwithstanding that the construction announced in these cases is to be regarded as a precedent, we deem it proper to indicate no opinion as to whether it should be in all respects adhered to in future cases. The question of the effect to be given the statute in a case where the purchaser at the tax sale is not in possession of the land, or where the former owner remains in possession or where the land is unoccupied, is not now before us. Therefore, "we need not inquire", as the supreme court of the United States said in a similar situation, "whether the Legislature intended that the action should be barred, where the purchaser at the tax sale was not in possession". *Pillow v. Roberts*, supra.

The argument on behalf of the plaintiff is that the tax sale under which the defendants claim is void, that it was so declared in *Smith v. Carlson*, supra, and, therefore, that there is nothing upon which the statute of limitation can operate. In effect, it is said that to apply the statute in these circumstances would amount to confiscation of the plaintiff's property.

It is true that the opinion in the Carlson case used the word "void" in setting aside the sale, but the court was not there dealing with the statute of limitation. The question was whether the title of the purchaser at the tax sale could withstand an attack made before the statutory period had run and the court held that, in

those circumstances, the erroneous assessment of excessive costs in the sum of 84 cents against each parcel of land was an irregularity rendering the sale void. We think that the court is not precluded by that decision from examining the question whether the plaintiff in this case may now, after the expiration of three years, impeach the sale.

The distinction between the two cases was put with great force and ability by Chief Justice Ryan, speaking for the court in *Oconto Company v. Jerrard*, 46 Wis. 317, 325, 50 N. W. 591. In that case there was an invalid assessment. The court, after referring to its previous decisions in which it had been held that where there is an invalid assessment "there is no tax", said:

"Strong as this language is, it would have been true of the tax deed in question, and would be true still, were the validity of the tax deed an open question. But these things were said, in the one case of a tax proceeding which had not matured in a deed, and in the other of a tax deed upon which the statute had not run. The former was a proceeding to enjoin a tax deed, and the latter to foreclose a tax deed. In both, the validity of the tax proceeding was open to inquiry, was the precise subject of litigation. There was no bar to the inquiry. The rights of the parties rested on their intrinsic validity, wholly unaffected by the time of the litigation. The language of the court applies to the circumstances and conditions of the questions in litigation. Here the question is, whether the respondents have not suffered the time to pass, within which they had the right to scrutinize the tax proceeding, or to raise such objections to the tax deed, or to apply such language to either; whether the statute has not closed their mouths forever, absolved the tax proceeding from all such errors, established the tax deed beyond impeachment, and barred the better title in favor of the worse, according to the operation of all statutes of limitation affecting the title to realty."

The former owners, seeking to set aside the sale, were held to be barred by lapse of time, the court saying:

"The respondents had their day to impeach the tax proceeding and avoid the tax deed. Then they might have said that the groundwork was so defective that there was no tax, and that the deed was therefore no tax deed. This they did not then do, and they are now too late to do it. They suffered the statute to purge the tax proceeding of all defects, to raise the tax deed above impeachment. Their objections may be well founded. But they come out of time. What the respondents might have said, they cannot now say. The statute has left them like one estopped to speak the truth, because they did not speak it when they might."

On the grounds thus stated we are of the opinion that other Oregon cases invalidating tax sales which it might be contended are inconsistent with the defense of the statute of limitation in this case are distinguishable. See, *Barber v. Newbegin*, 154 Or. 55, 58 P. (2d) 1254; *Wing v. Parrott*, 154 Or. 405, 60 P. (2d) 603; *Watson v. Jantzer*, 151 Or. 1, 47 P. (2d) 239; *Peterson v. Graham*, 131 Or. 290, 279 P. 553, 282 P. 1084; *Hoskins v. Dwight*, 69 Or. 558, 139 P. 922; *Hodgkin v. Boswell*, 63 Or. 589, 127 P. 985; *Walton v. Moore*, 58 Or. 237, 113 P. 58, 114 P. 105.

This is a case of possession by the purchasers at the tax sale for more than three years after the sale under a deed valid on its face—a case free from the complexities and the confusion in the decisions found where the tax deed is void on its face, or the purchaser has not taken possession, or where both of these elements concur. See, *Matthews v. Blake*, 16 Wyo. 116, 92 P. 242, and annotation, 27 L. R. A. (N. S.) 340–345. The rule applicable here is correctly stated, we think,

in that annotation, at p. 345 of the cited volume, as follows:

"Whichever view is taken of the function of a tax deed, it is virtually agreed upon all sides that it is effectual to start running a special short-term statute of limitations, whatever may be its infirmities, provided it is not absolutely void on jurisdictional grounds. Defects, irregularities, informalities, errors, and omissions in the antecedent proceedings of assessment, taxation, and sale, not jurisdictional, however grave and fatal to the validity of the tax deed in an action seasonably begun, are all cured and foreclosed when the special statute has run the prescribed length of time. The very purpose of such a statute is to shut off inquiry into all such matters, and confirm the tax deed in spite of them, and unless it does this it is nugatory. The decisions make this quite plain, and are in harmony, to this effect at least, where the tax deed is regular on its face."

To the same effect are, 2 Blackwell on Tax Titles (5th Ed.) 842, § 895; 4 Tiffany, Real Property (3d Ed.) 680, § 1251; 26 R. C. L. (Taxation) 443, § 399; Black on Tax Titles (2d Ed.) 636, § 498.

Numerous decisions support the quoted text, among which we may refer to the following: In *Williams v. Conroy*, 35 Colo. 117, 83 P. 959, the plaintiff's deeds were, as stated in the opinion, "regular and valid on their face, though because of informalities in the sale they are, as a matter of law, void." The statute, which barred actions "for the recovery of land sold for taxes" after five years from the execution and delivery of a deed therefor by the treasurer, was held to be applicable. It was said that "a void deed taken in good faith constitutes sufficient color of title under our statute of limitations", 35 Colo. 121. It was further said that the "statute does not require possession to

be taken of land by the purchaser at a tax sale as an essential condition to the running of the statute of limitations. The tax deed draws to it constructive possession of unoccupied land   *   *   *'' 35 Colo. 124.

In *Trulock v. Bentley*, 67 Iowa 602, 25 N. W. 824, it appears that the Iowa statute requires service on the owner of land sold for taxes of notice of the expiration of the time for redemption, and that in this case the proof of such service was defective. The basis of the decision holding that the five-year limitation statute barred an action to recover the property from the purchaser at the tax sale was that there was a mere defective performance of a jurisdictional requirement. The court said that the act, therefore, could not "be regarded as void in the sense in which the word is used when applied to acts done without authority".

In the case of the *Oconto Company v. Jerrard*, supra, the irregularity, as has been stated, consisted of an invalid assessment. The action was held to be barred by the statute. The court distinguished cases where "municipalities or their taxing officers assume to levy a tax or to institute a tax proceeding not authorized by statute" and which "is a mere usurpation, and absolutely void throughout for all purposes."

"In such a case", it was said, "there is nothing for the statute of limitations to act upon. But when there is statutory authority within the scope of the constitution, to raise money by taxation, from property subject to taxation, to come into the public treasury for public use, and there is an actual attempt, under color of law, to exercise the authority, it is, while *in fieri, prima facie* a valid tax proceeding; and when the statute of limitations has run upon it, it is conclusively established as a valid exercise of the taxing power.

"The distinction is, in principle, like that between judicial jurisdiction and judicial error. Want of jurisdiction is always an open question, everywhere. Error can be imputed only by appropriate judicial proceeding, within the time limited by law to establish it." 46 Wis. 328.

*Milledge v. Coleman*, 47 Wis. 184, 2 N. W. 77, applies the same rule to a case where the price of a United States revenue stamp was illegally included in the amount for which the land was sold for taxes. The identical question arising under the Wisconsin statute was determined in the same way in *Geekie v. Kirby Carpenter Co.*, 106 U. S. 379, 27 L. ed. 157, 1 S. Ct. 315, the court saying:

"The general authority of the taxing officers and the liability of the land to taxation having existed, there was no want of authority to put the taxing power in motion. That being so, the lapse of time establishes conclusively the validity of the tax and of the sale, as against the irregularity in question. There having been jurisdiction, all error was conclusively barred by the statute."

In *Peck v. Comstock*, 6 Fed. 22, the Wisconsin statute was held to be a bar in a case where the purchaser at the tax sale had failed to comply with a statute requiring notice of his application for a deed to be given by publication. See, also, *Litch v. Bryant*, 46 Colo. 160, 103 P. 289; *Barrow v. Wilson*, 39 La. Ann. 403, 406, 2 So. 809; *McDougall v. Montlezum*, 39 La. Ann. 1005, 3 So. 273; *Reilly v. Blaser*, 61 Mich. 399, 402, 28 N. W. 151; *Cornelius v. Ferguson*, 23 S. D. 187, 121 N. W. 91; *Halsted v. Silberstein*, 196 N. Y. 1, 89 N. E. 443; *Houssel v. Boggs*, 17 Neb. 94, 22 N. W. 226; *Towle v. Holt*, 14 Neb. 221, 228, 15 N. W. 203; *Bowman v. Cockrill*, 6 Kan. 311, 339.

If the rule of law announced by these authorities is sound, as we think it is, it remains only to inquire whether there are jurisdictional defects in the proceedings for the sale of the lands in question. The only irregularity pointed to is the taxation of excessive costs in a small sum which went into the amount for which the property was sold. In *Milledge v. Coleman*, supra, and *Geekie v. Kirby Carpenter Co.*, supra, similar errors were held not to prevent the running of the statute. The argument in those cases was that the land was not sold for nonpayment of taxes. The answer of the supreme court of Wisconsin to that contention is as follows:

"In the case before us, the land was sold for $8.08, of which $8.03 were confessedly legal taxes and legal charges. It is quite true the land was sold for a gross sum, a part of which was legal and a part illegal. But we have no doubt there was a sale for the nonpayment of taxes, within the meaning of the statute. If the limitation does not apply to the deed in this case, neither would it apply to any case where there was included in the amount for which the land was sold an illegal excess arising from the mistakes of the taxing officers, in extending the tax, or where there was an erroneous charge for fees, whether made intentionally, or through mistake of law." Milledge v. Coleman, *supra.*

The cases cited all arose under statutes which authorized the sale of land for taxes to be made by ministerial officers without court proceedings. The sale here was decreed by the circuit court in a judicial proceeding regularly commenced pursuant to law, notice of which was duly given to the property owners whose interests were affected, and all of whom, including the then owners of the property here involved, had the right and the opportunity to appear and be heard.

§§ 69-816, 69-817, 69-820, Oregon Code 1930. This court in *Hoskins v. Dwight*, 69 Or. 558, 566, 139 P. 922, took occasion to comment upon the altered viewpoint of the court, induced by the change from a summary proceeding by ministerial officers to a foreclosure by suit. It was said:

"The statute now in vogue making taxes charged against real property a lien thereon, and providing for the foreclosure thereof, gives the owner of the premises, upon whom a summons must be served, a day in court where he may present his defense, and affords him an opportunity to be heard before he can be deprived of his land, thereby avoiding the necessity of resorting to the hard-and-fast rule of summary proceedings undertaken by ministerial officers to collect the burden formerly imposed: Washington T. & L. Co. v. Smith, 34 Wash. 625, 76 P. 267. In order to protect the rights of the taxpayer, it was essential to hold that, before title to real property could be involuntarily alienated in a proceeding that was not judicial in character, every step required by the statute to assess, levy and collect the tax should have been strictly performed. Under the enactment as it now exists, his rights will be securely guarded by courts competent to afford him every protection that the law guarantees, and, this being so, there is no necessity for ordinarily invoking the rule of strict construction."

See, also, Black on Tax Titles (2d Ed.) 225, § 178.

If the improper addition of a small sum to the amount for which the property is sold is not deemed fatal as against the plea of the statute of limitation when the proceedings are *ex parte* and summary in character, for a much stronger reason should the lapse of the statutory period be held to set all such questions at rest when the error occurs in a judicial proceeding. Having jurisdiction to decide, the court had jurisdiction to decide erroneously. The tax had been assessed

and was delinquent, and the decree of the court was the sheriff's authority for making the sale, § 69-820, Oregon Code 1930. "There was no want of authority to put the taxing power in motion", *Geekie v. Kirby Carpenter Co.*, supra. We think the irregularity did not go to the jurisdiction to make the sale. Statutes of limitation are "statutes of repose, and should not be evaded by a forced construction * * * (they) would be of little use if they protected those only who could otherwise show an indefeasible title to the land", *Pillow v. Roberts*. If the statute were to be held inapplicable in this case we do not know to what kind of a case it should be applied nor what sort of errors in the proceedings it would cure. The legislature certainly intended to accomplish something by its enactment, and we think that its purpose was to encourage the purchase of land ordered to be sold for delinquent taxes by giving prospective purchasers assurance that after the lapse of three years—at least where the purchasers have taken possession—their titles would not be disturbed on account of errors and irregularities such as occurred in the foreclosure suit of *Marion County v. Highstone*. See, Black on Tax Titles (2d Ed.) 628, § 492. This is the public policy of the state, and it is not the business of the courts to thwart that policy nor by "ingenious and astute construction" (*Pillow v. Roberts*, supra) to make a dead letter of the statute but rather to carry out its provisions and the public policy which it declares.

The plaintiff argues that the legislature cannot cure void proceedings by lapse of time alone. The principle is thus stated in 2 Blackwell on Tax Titles 840, § 895:

"* * * A tax purchaser who gets no valid title and does not take actual possession, nor give any notice that he claims possession, has no right upon which to

build a limitation. There is nothing to give repose to. The law cannot by its fiat *create* rights, any more than it can make value by a word. Rights are parts of the substance of things; all the law can do is to protect them. If the actual possession is in the purchaser, the legislature can bar the owner after a short term, no matter what defect may exist in the tax proceedings, or how void the deed may be on its face or otherwise. If the actual possession is in the owner, the law-makers may bar the purchaser; but they cannot compel the owner to bring suit against the purchaser, nor even a bill to remove the cloud. It is utterly beyond legislative power to transfer to B. property of which A., the owner, is in the actual possession by himself or his agent or lessee or licensee, by void tax proceedings and lapse of time.''

This doctrine was applied in *Groesbeck v. Seeley*, 13 Mich. 329, cited with approval in *Martin v. White*, supra. In that case the court held that the statute of limitation had not run because the owner remained in possession of the land after the tax sale. The court said that to sustain the tax title (which was defective) in these circumstances would ''be nothing more nor less than depriving one of his property without any legal possession and is simply confiscation by ministerial and not judicial action.'' In several of the states a tax deed valid on its face gives to the grantee constructive possession of the land. See, 2 Blackwell on Tax Titles 839, § 895; 4 Cooley, Taxation (4th Ed.) 2974, § 1513. One of these states is Wisconsin. Its construction of its statute was followed and applied in *Bardon v. Land and River Improvement Co.*, 157 U. S. 327, 39 L. ed. 719, 15 S. Ct. 650, a case in which no constitutional objections seem to have been suggested. The Washington court has extended the protection of the statute of that state to cases where the tax deed

was void on account of jurisdictional defects: *Keller v. Davis*, 93 Wash. 336, 160 P. 946; *Huber v. Brown*, 57 Wash. 654, 107 P. 850; and to cases where the judgment was procured by fraud—*Savage v. Ash*, 86 Wash. 43, 149 P. 325; *Fleming v. Stearns*, 66 Wash. 655, 120 P. 522.

Perhaps valid constitutional objections might be urged in some of these cases. But we need not pursue the subject further. The soundness of the rule stated by Mr. Blackwell and applied in *Martin v. White* and *Groesbeck v. Seeley* is not now before us. We see no necessity for deciding constitutional questions not presented by the record in this case nor for determining what would be the result were the facts different from what they are. As we have seen, the sale here was not void in the jurisdictional sense. The defendants' deed, which by the statute then in existence was *prima facie* evidence of the assessment of the tax, its nonpayment, the regularity of the proceedings, and other essential facts (69-828, Oregon Code 1930) is valid on its face and constitutes color of title. Blackwell, op. cit. 850, § 899; *Pillow v. Roberts*, supra; *Martin v. White*, supra; 26 R. C. L. (Taxation) 445, § 401. The defendants went into possession under their deed and so remained for the statutory period. This is the situation upon which the statute operated. The mere statement of these facts, without more, is sufficient demonstration that to hold that the defendants' title is now immune from attack by reason of the running of the statute of limitation is not to deprive the plaintiff of its property by mere lapse of time or without due process of law. No authority to the contrary has been called to our attention, and there is a host of cases, many of which have been cited in this opinion, in which the statute

has been enforced in similar circumstances. "Such statutes", it is said in 4 Cooley, Taxation (4th Ed.) 2971, § 1511, "are enacted under the sovereign power of the state to limit within reasonable bounds the time for which its courts shall remain open for the adjustment of controversies, and when the time is not unreasonably short they are grounded in sound policy." And, as the same author points out (2975, § 1513), "it probably cannot be said that it is beyond the constitutional power of the legislature to give the recorded tax-deed conclusive effect as evidence of title after the lapse of five years' time, in any case where the adverse claimant has no actual possession."

The court is criticized for its attitude toward *Smith v. Carlson*. It is said that the irregularity in the tax proceeding in *Marion County v. Highstone* must have been deemed jurisdictional else the court could not have declared the sale void on collateral attack. We shall not debate the question of what constitutes a collateral attack on a judgment or decree. All the members of the court who concur in this opinion are not agreed that it was a collateral attack in *Smith v. Carlson*. Putting that matter to one side, every one familiar with the course of decision in tax-title cases in this court knows that they have been deemed *sui generis*, and have not been governed by the rules applicable to the ordinary type of litigation. This was for two reasons: one, solicitude for the poor man facing loss of his property because of inability to pay his taxes, and the other, the fact that proceedings to sell property for delinquent taxes, whether by judicial or purely administrative proceedings, are *in invitum*. So, in passing on these cases, the court has at times deemed it an important if not decisive factor that there is great disparity be-

tween the amount for which the property sold and its value. *Watson v. Jantzer*, 151 Or. 1, 10, 47 P. (2d) 239. In no other class of cases would a consideration of that sort have been deemed relevant, and it goes without saying that it has no bearing whatever on the question of jurisdiction. Rightly or wrongly, the court has assumed broad equitable powers in these cases to accomplish what were undoubtedly deemed beneficent purposes.

At an early date this court held that the taxation of excessive costs in a judicial proceeding is not a jurisdictional defect, and hence there was no lack of jurisdiction to enter the decree in *Marion County v. Highstone*. Since this is so clear and evident, it is unreasonable to suppose that the court thought any differently about it in deciding *Smith v. Carlson,* but, rather, that, in accordance with prior decisions, it was applying a rule peculiar to cases involving the validity of titles based on sales for delinquent taxes.

Cogent reasons are advanced for overruling *Smith v. Carlson* and the precedents which it followed. But a majority of the court, including the writer of this opinion, are unwilling at this time to take this course, though not all of us for the same reasons. It is, perhaps, sufficient to say that those of us who question the correctness of these decisions deem it highly inexpedient and fraught with possibilities of great harm to declare valid today the identical sale which so recently we adjudged to be invalid.

As held in the former opinion, the absence of findings constitutes error. In *State ex rel. v. Bassett*, 166 Or. 628, 113 P. (2d) 432, the judgment was reversed because no findings had been entered, and the cause was remanded with instructions to make and enter findings

and a new judgment. The absence of a bill of exceptions or transcript of testimony made necessary the course there taken. In the instant case the testimony is all before us, and we exercise the authority granted by Art. VII, § 3, of the Constitution to affirm the judgment notwithstanding the error.

We conclude that the action is barred by the statute of limitation. We are, therefore, unable to adhere to our former opinion.

The judgment is affirmed.

KELLY, C. J., and RAND, J., concur in the result.

BAILEY and BELT, JJ., concur.

---

Mr. Justice BRAND concurs in the result. He is of the opinion that *Smith v. Carlson* ought to be overruled, but, if that is not done, that the defendants are entitled to prevail on the plea of the statute of limitation.

---

ROSSMAN, J. (specially concurring). I believe that our previous opinion correctly disposed of all contentions then submitted. I dissent from the reasoning employed by the majority. I concur in the result that they reach. My reasons follow.

It will be recalled that in 1935 Marion County instituted in the circuit court an omnibus tax foreclosure suit, entitled *Marion County v. Highstone*, affecting 1100 items of tax delinquent real property. The suit culminated in a decree which ordered the sale of the 1100 delinquent properties. Among the latter were the property involved in this action and another parcel which became the subject-matter of the suit entitled *Smith v. Carlson*, 160 Or. 383, 85 P. (2d) 1028. In

*Smith v. Carlson* we held that the decree entered in the omnibus tax foreclosure suit was void. The suit entitled *Marion County v. Highstone* was maintained under the provisions of our laws which authorize the foreclosure of the liens of delinquent taxes by suits in the circuit court. The procedure is substantially similar to that pursued in the foreclosure of the liens of mortgages. In *Smith v. Carlson* this court held that the decree entered in *Marion County v. Highstone* awarded 84 cents excessive costs against the delinquent property owned by the Carlsons. Referring to that circumstance, the decision said: "The proceeding as to it is void." Having so declared, the decree, sale and tax deed were held nullities. The property was restored to the Carlsons. It is stipulated that excessive costs were also charged against the property involved in the present action which is one of ejectment. Thus, it will be seen that the defendants (the delinquent owners) in *Smith v. Carlson* made a collateral attack upon the decree entitled *Marion County v. Highstone,* and that the attack succeeded.

It is highly essential, I believe, that we bear in mind the fact that *Smith v. Carlson* held that the foreclosure proceeding was void. The majority deal with *Smith v. Carlson* as though the word "void" does not appear in the decision. However, as already stated, the heart of that decision is the line which reads: "The proceeding as to it (excessive cost) is void." The decree in *Marion County v. Highstone* was not subject to impeachment in a collateral proceeding like *Smith v. Carlson* unless the decree and its attendant proceedings were void. As is universally held, a decree which is merely irregular or voidable, however irregular or voidable it may be, is not subject to collateral attack.

*Smith v. Carlson* was properly decided only in the event the decree in *Marion County v. Highstone* was void, that is, a nullity. But the majority in dealing with *Smith v. Carlson* seem to delete from it the word "void" and insert in its place the word "irregular" or possibly the word "voidable". But if that substitution is made, then *Smith v. Carlson*, as I just stated, was erroneously decided. It is impossible to infer that when Mr. Justice BEAN wrote *Smith v. Carlson* he used the word "void" as the equivalent of "voidable" or "irregular". In the first place, if he used the word in that sense the result of his decision, as already indicated, was wrong. In the next place, this court had already held several times that a sale by a sheriff of tax delinquent property for a sum larger than the amount actually due is void. It held the sales void on the theory that the sheriff had no authority or jurisdiction to make the sale when he asked more than the true amount which was actually due. A reading of *Darling v. Christensen*, 166 Or. 17, 107 P. (2d) 585, *Watson v. Jantzer*, 151 Or. 1, 47 P. (2d) 239, *Barber v. Newbegin*, 154 Or. 55, 58 P. (2d) 1254, and *Wing v. Parrott*, 154 Or. 405, 68 P. (2d) 603, will readily show that *Smith v. Carlson* used the word "void" in its literal sense; that is, as the equivalent of nullity. Each of those four decisions passed upon situations very similar to the one in *Smith v. Carlson*, and each, in expressing the conclusion of this court, used the word "void". Not one of them used "voidable" or "irregular". *Watson v. Jantzer* took repeated occasion to brand the delinquent tax foreclosure proceeding as void. In that case, as in the present one, excessive costs had been taxed; in fact, that decision expressly rejected a contention that the proceeding was merely irregular or voidable. The occasion for rejecting the contention

was an argument made by the holder of the tax deed that § 69-841, Oregon Code 1930, cured the defects. That section of our laws cured "irregularities, omissions or defects" in tax titles, but the decision said:

"Again we say that this section could only cure irregularities and is not applicable where the land is sold for a tax that was unlawfully increased by the addition of unwarranted costs, * * *. Holding, as we do, that the foreclosure sale was void by reason of the addition of excessive costs * * *."

The reason this court has held repeatedly that the addition of an unwarranted amount to the tax renders the proceeding void is evident. Before the act which I shall later cite was adopted, this court held that the sheriff in selling delinquent property had authority to sell it only for the true amount that was owing, and that if he demanded more than the true amount he acted beyond the scope of his authority or jurisdiction. See, for instance, *Walton v. Moore*, 58 Or. 237, 113 P. 58, 114 P. 105, and *Hodgkin v. Boswell*, 63 Or. 589, 127 P. 985. Both held the unauthorized addition of a sum to the amount due rendered the sale void. It is evident that *Smith v. Carlson* did not use the word "void" carelessly and as the equivalent of "voidable" but in its literal sense.

The majority ought either to give effect to *Smith v. Carlson*, in which event their conclusion cannot stand, or overrule it and its companion decisions. Since *Smith v. Carlson* has not been overruled, I shall in this specially concurring opinion give effect to its holding and employ the word "void" as it is there used.

The majority, referring to our short-term statute of limitations, which was in effect in 1935 (§ 69-845, Oregon Code 1930), say: "If the statute were held to be inapplicable in this case, we do not know to what

kind of a case it should be applied nor what sort of errors in the proceedings it would cure."

Clearly, the statute is applicable as a bar in all cases where the statutory period has run; provided the case does not fall within one of the three exceptions enumerated in the statute and the defense has been neither waived nor withdrawn. Statutes of limitation are not curative, but if such is the nature of this one, then the inquiry "what sort of errors in proceedings it would cure" is met by the fact that in *Smith v. Carlson* this court held that the proceeding out of which the defendants' tax deed issued was void. As already indicated, the word "void" was used in its literal sense, and not as the equivalent of voidable or irregular. Citations to authorities are not necessary to warrant the statement that a void sale, deed or proceeding is wholly without force or effect and is incapable of being made otherwise. Anything which is void is null and incapable of confirmation, ratification or cure.

The majority say that our original opinion misstated the reasoning employed in *Martin v. White*, 53 Or. 319, 100 P. 290, and *Dufur v. Healy*, 56 Or. 49, 107 P. 692, and indicate that possibly our short term statute of limitations is prescriptive in character. I do not subscribe to their criticisms of our previous decision, and observe that the parties do not entertain their views. For instance, the brief of amicus curiae says: "We are in exact agreement with this Honorable Court that § 69-845, Oregon Code 1930, and subsequent amendments are statutes of limitations." The defendants' brief upon rehearing does not question the propriety of our interpretation of the statute, but, to the contrary, says: "We pleaded it as a statute of limitation." In *Victor Land Co. v. Winters*, 59 Or. 420, 116 P. 1070,

which was decided after *Martin v. White* and *Dufur v. Healy*, Mr. Justice McBride, on behalf of this court, said:

"Section 3128 B. & C. Comp., requires all actions to recover property sold for taxes to be commenced within three years from the recording of the tax. This is, in its nature, a statute of limitations."

That is exactly what was held in our original decision; that is, we held it to be, as it purports to be, a statute of limitations.

Possibly the majority do not entertain the thought that the statute is actually a prescriptive one, but believe that the holder of a tax deed must have possession if he desires to plead the statute of limitations. If that is what they mean, the introduction of that suggestion into our delinquent tax foreclosure law, which is already sufficiently complex, will add to the uncertainty. Although the majority seemingly believe that the tax title claimant must have possession (most delinquent property is vacant), they intimate that the necessity for possession is readily satisfied—it is satisfied by a mere fiction. For instance, they quote from *Williams v. Conroy*, 35 Colo. 117, 83 P. 959 (which decision, incidentally, has met with criticism) the following: "The tax deed draws to it constructive possession." Thus, the indispensable requisite of possession is readily supplied—a fiction supplies it. Since it is so readily and artificially supplied, it is strange that the majority create a necessity for it.

The majority hold that the plaintiff cannot maintain this action. It will be recalled that *Smith v. Carlson*, as already indicated, held that the delinquent tax foreclosure proceeding out of which the defendants obtained their deed was void. If the foreclosure pro-

ceeding was void, the decree entered in the proceeding was also void; and that being true, the deed possessed by these defendants is similarly void. Thus, the defendants have no title to the property. They have nothing which a statute of limitations can protect. Such a statute is an implement of defense, not a source of title. The four Washington decisions cited by the majority in support of the statement, "The Washington court has extended the protection of the statute of that state to cases where the tax deed was void," in my opinion, do not warrant the statement. It is true that two of them make sweeping statements of that general kind, but the decisions did not go that far. Certainly, no decision has ever held that a tax deed which has been held void by a court can usher in a title by prescription.

Further, I am satisfied that the effect of the stipulation signed by the parties (it is quoted in our previous opinion) was to withdraw the plea of the statute of limitations and to submit the cause on its merits. Moreover, neither in the circuit court nor in this court until now upon rehearing have the defendants relied upon the statute of limitations. They have constantly argued that they acquired title by adverse possession. Parties cannot present upon appeal issues which were not submitted to the trial court.

It appears to me that the decision of the majority is unfortunate. It introduces into our complex tax law a new principle, foreign to our tax foreclosure procedure, which the majority seemingly identify as "jurisdiction to make the sale," meaning administrative jurisdiction. In introducing this principle, the majority quote from a text the following:

"Whichever view is taken of the function of a tax deed, it is virtually agreed upon all sides that it is

effectual to start running a short-term statute of limitations, whatever may be its infirmities, provided it is not absolutely void on jurisdictional grounds.''

With that statement I agree. The cases to which the text referred were unaffected by laws whereby the lien of delinquent taxes is foreclosed by judicial proceeding. Having introduced that thought, the majority say: ''If the rule of law announced by these decisions is sound, and we think it is, it remains only to inquire whether there are jurisdictional defects in the proceedings for the sale of the lands in question.'' The authorities to which the majority then referred passed upon foreclosures ordered by administrative as distinguished from judicial decrees. Unlike the present foreclosure, none of those had been impeached by judicial decision. Finally, the majority state their conclusion as follows: ''We think the irregularity did not go to the jurisdiction to make the sale.'' However, this court has held that when a sheriff sells for an amount larger than the delinquent taxes, he lacks authority or jurisdiction to make the sale and that, therefore, the sale is void. Two instances are *Walton v. Moore*, supra, and *Hodgkin v. Boswell*, supra. Those decisions have not been overruled, but have been several times cited with approval. Moreover, it will be recalled that *Smith v. Carlson* held that the entire proceedings were void; in other words, when the sheriff sold the plaintiff's property he had a void order of sale, and nothing else. That being true, he certainly had no ''jurisdiction (right or authority) to make the sale.'' Thus, concerning the sheriff's authority, this court has reached two opinions directly opposite one another: In *Smith v. Carlson* we said the sheriff had no valid authority—we now say the contrary. It ap-

pears to me that we ought either to overrule *Smith v. Carlson* or give it effect.

Further, the majority, after referring to decisions which sustained tax sales based upon proceedings of a nonjudicial type, say: "If the improper addition of a small sum to the amount for which the property is sold is not deemed fatal as against the plea of the statute of limitation when the proceedings are ex parte and summary in character, for a much stronger reason should the lapse of the statutory period be held to set all such questions at rest when the error occurs in a judicial proceeding." But *Smith v. Carlson* "set all such questions at rest" (that is, those concerning the defendants' tax title) long before the "lapse of the statutory period" by holding that the proceeding was void. The quotation from the majority opinion which I have just made is succeeded by the following: "Having jurisdiction to decide, the court had jurisdiction to decide erroneously. The tax had been assessed and was delinquent, and the decree of the court was the sheriff's authority for making the sale." The words "having jurisdiction to decide" refer to the tax foreclosure suit entitled *Marion County v. Highstone* to which the majority refer in the first paragraph of their decision. The words "the decree of the court was the sheriff's authority for making the sale" mean the decree entered in *Marion County v. Highstone*. All that the majority say would be true if this court had not held in *Smith v. Carlson* that the foreclosure proceeding (*Marion County v. Highstone*) was void. In *Smith v. Carlson* this court held that the "decree of the court" which the majority in the above-quoted language say "was the sheriff's authority for making the sale" was a void decree, and held further that the sale which he made pursuant to its authority was a

nullity and that it conferred no title. Frankness should prompt the majority to say, "The *void* decree of the court was the sheriff's authority for making the sale." This court, in harmony with the universal trend of authority, has held that a writ of execution based upon a void decree confers no authority upon the sheriff (it too is void), and the resulting sale yields no title: *Willamette Real Estate Co. v. Hendrix*, 28 Or. 485, 42 P. 514, 52 Am. St. Rep. 800; 21 Am. Jur., Executions, p. 27, § 23; 23 C. J., Executions, p. 319, § 30. According to 31 Am. Jur., Judgments, p. 91§ 430:

"All proceedings founded on the void judgment are themselves regarded as invalid. In other words, a void judgment is regarded as a nullity, and the situation is the same as it would be if there were no judgment."

Thus, the words "there was no want of authority" found in the above-quoted passages are untrue. The direct opposite of that holding was announced in *Smith v. Carlson*; in fact, that decision decided everything embraced in the quoted language contrary to the majority's present position.

Without further analysis of the majority's opinion, I state my belief that our previous decision is free from error. It is free from error provided *Smith v. Carlson* is sound. The principles which governed that case also govern the present one.

The carefully prepared brief of amicus curiae, in stressing the importance of this cause, dwells upon the numerous recent titles in this state which are predicated upon tax foreclosure proceedings. It argues in behalf of security for such titles. The circumstances persuade me that the all-important phase of our present cause is whether *Smith v. Carlson* was properly decided. In writing our previous opinion I felt bound

by the authority of that decision, although I doubted the correctness of it. I thought that the decree entered in *Marion County v. Highstone* was not subject to collateral attack. I am now satisfied that that decision is erroneous and that we ought to say that we will no longer adhere to it. The treatment accorded it by the majority does not appeal to me. I believe that *Smith v. Carlson* failed to yield to the decree entered in the tax foreclosure proceeding the effect to which it was entitled. The majority, while voicing approval of that decision, evade its holding. Now that the majority have spoken, no one can know whether the decree entered in a tax foreclosure suit is free from collateral attack or subject to it. Sections 69-829, Oregon Code 1930, and 110-920, O. C. L. A., expressly declare that the decree entered in such a suit "shall be conclusive evidence of its regularity and validity in all collateral proceedings" and that it "shall estop all persons" from making such attacks. I shall now endeavor to determine whether those provisions of our laws governing the foreclosure of the lien of delinquent taxes prohibit an attack upon the decree entered in *Marion County v. Highstone*. If they prohibit such attacks, *Smith v. Carlson* was wrongly decided; and likewise if such attacks cannot be maintained, the defendants' title must be sustained.

It will be recalled from what was said in our previous opinion in this case that the Smiths in *Smith v. Carlson* are defendants in this case. Before twice becoming litigants the Smiths purchased two parcels of real property upon which Marion County had foreclosed liens of delinquent taxes. The foreclosure was effected in a suit of the omnibus type, entitled *Marion County v. Highstone*. It was conducted in the circuit court. One of the properties which the Smiths bought

became the subject-matter of the suit entitled *Smith v. Carlson*. In it the Smiths alleged their tax title and made the foreclosed tax delinquent owners (the Carlsons) the defendants. They asked that their title be deemed valid and that it be quieted against the claims of the Carlsons. The latter challenged the validity of the tax foreclosure proceedings and in *Smith v. Carlson* this court sustained the defense. In the present action the Smiths are again parties; this time they are defendants. Another of their purchases is the subject-matter of the action. This time the cause assumes the form of an action of ejectment brought by the delinquent owner who, like the Carlsons in *Smith v. Carlson*, challenges the regularity of the tax foreclosure proceedings. As we have said, we assumed, in writing our previous opinion, that *Smith v. Carlson* was properly decided and, therefore, deemed the Smiths' deed to the property claimed by the plaintiff invalid.

Both of the aforementioned tax titles had their origin, as already indicated, in a suit in the circuit court entitled *Marion County v. Highstone*. The complaint in that suit described 1100 parcels of real property including the two just mentioned and made the owners of all the parcels defendants. Among the latter were the Carlsons and the predecessors in title of the plaintiff in this action. The suit ended in a decree foreclosing the lien of the delinquent taxes and in an order for the sale of the foreclosed properties. After the entry of the decree Marion County filed a cost bill, and still later the sales ordered by the decree occurred. It was through those sales that the Smiths acquired their two tax deeds.

In *Smith v. Carlson* this court said that the decree in *Marion County v. Highstone* awarded the county

84 cents more costs against the Carlsons than it was entitled to charge. The stipulation states that a similar excessive taxation of costs occurred in the part of the decree foreclosing the delinquent tax liens against the property now owned by this plaintiff. The excessive award of costs seemingly occurred in the following manner. The cost of publishing the omnibus summons affecting the 1100 items of property was $1,826. That amount divided by 1100 is $1.66; but against each property $2.50 costs were awarded, or 84 cents more than the expenditure.

It will be observed that *Smith v. Carlson* was not an appeal from the decree entered in *Marion County v. Highstone.* Notwithstanding the positive language of § 69-829 that decision refused to deem the decree just mentioned "conclusive evidence of its regularity and validity." It should also be noticed that the sale of the delinquent properties was not made by the sheriff through the exercise of purely administrative powers, but as the final culmination of a judicial proceeding to which the tax delinquent owners had been summoned. Nevertheless, *Smith v. Carlson,* after declaring "the costs of $2.50 taxes against the defendant taxpayers' property were excessive", held "the foreclosure proceeding as to it is void." Thus, the collateral attack was sustained.

Note will now be taken of the statutes of this state which authorize the foreclosure of the lien of delinquent taxes and the sale of tax delinquent properties. My purpose is to determine whether the decree in *Marion County v. Highstone* was subject to collateral attack.

In 1907 a fundamental change was made in the statutes of this state which deal with tax delinquent

properties. The change required that the sale of tax delinquent properties be preceded by a tax foreclosure suit instituted in the circuit court to which the owners of the tax delinquent properties must be made parties defendant and must be summoned to appear. I shall shortly take note of the statutes in detail, but before so doing shall mention briefly the previous procedure. Prior to 1907 the sale was not preceded with a judicial proceeding of any kind. The sheriff, in a purely administrative capacity, sold all properties which the county's records indicated were tax delinquent. There was no judicial determination of the purported delinquency, the amount of the taxes or of any other circumstance. The practice was governed by §§ 3117 to 3127 B. and C. Comp. Under that procedure the sheriff's authority for the sale of the property supposedly delinquent was a warrant issued, not by a court, but by the county clerk. Upon its receipt the sheriff published notice of the future sale for four successive weeks. At the end of that time he made the sale. The proceeding was in reality a forfeiture and the decisions so termed it. It will be seen that an owner whose property was included in the delinquent list and who had a defense was afforded no opportunity by way of a judicial proceeding to present it unless he reversed the situation and, through the medium of a suit instituted by himself, made an attack upon the sale.

It was under those circumstances, which afforded the owner no opportunity to challenge the regularity of the tax delinquency proceedings until he himself instituted a suit, that the courts applied to the statutes governing the sales the rules of strict construction and held that departures from the letter of the law were fatal. However, it will be noticed that under that procedure the tax delinquent owner upon filing his suit

was not faced with a previous decree like the one entitled *Marion County v. Highstone*. When he filed his complaint nothing averred in it had been the subject-matter of judicial determination. An instance illustrative of the judicial attitude prior to the 1907 enactment is *Walton v. Moore*, 58 Or. 237, 113 P. 58, 114 P. 105. In that case the amount of interest on the delinquent tax was $1.05, but the notice of sale erroneously stated it to be $1.12. The statute required that the amount of accrued interest be indicated in the notice. The decision held that this misstatement rendered the sale void. Upon rehearing the tax title claimant argued that the discrepancy was so small that it ought to be deemed unsubstantial. That argument was answered in the decision as follows:

"* * * But in proceedings in invitum, where it is proposed to take a man's property for one thirty-fifth of its assessed value, the law does care for small things, and will not infrequently consider them to prevent an inequitable forfeiture. From the case of Shylock v. Antonio, reported at large by Shakespeare, down to the last volume of Oregon reports, the courts have held that statutes providing for a forfeiture shall be strictly construed, and far be it from this court to say that a sum of money, coined by the government of the United States, which under certain circumstances it is a penitentiary offense to steal, and which is sufficient to furnish bread to the hungry, cheering drink to the thirsty, and to the miser the means of contributing to charity, shall be treated as unsubstantial in a case of this character."

Let us now turn to the statutes governing the foreclosure of the liens of delinquent taxes which were in effect at the time when *Marion County v. Highstone* was begun. Those statutes had their origin in 1907 Session Laws, Ch. 267. That act repealed the previous statutes authorizing sale by the sheriff upon the war-

rant of the county clerk and inaugurated the procedure which will shortly be reviewed in detail; in short, that procedure consists of a foreclosure suit to which the alleged delinquent owner is summoned and which is followed by a decree foreclosing the lien of the delinquent taxes in the event the delinquency is established. *Marion County v. Highstone* was begun June 13, 1935, and its decree was entered November 20 of that year. The complaint in *Smith v. Carlson* was filed February 21, 1936, and the one in the present action in 1939. Since many amendments were made to 1907 Session Laws, Ch. 267, before *Marion County v. Highstone* was instituted, I shall not cite the various sections of that act, but, rather, the sections of the 1930 code and in other instances session laws adopted after 1930, but before 1935. In proceeding with the review of those statutes, I shall employ the present tense although some of those laws have since been amended.

Section 1, Ch. 326 of 1933 Session Laws renders all taxes unpaid on December 15 delinquent. Section 69-738, Oregon Code 1930, requires the tax collector to send written notice of delinquency to each delinquent taxpayer and to state in it "the rate of interest and penalties applicable thereto." The notice must "also contain a statement of the date on or after which a certificate of delinquency may be issued." Section 69-801, Oregon Code 1930, makes provision for the issuance by the sheriff of certificates of delinquency to individuals who have discharged the delinquency. The certificates are rendered issuable six months after the tax charged against the property becomes delinquent. Section 69-807 permits the foreclosure of certificates of delinquency by a suit filed in the circuit court "after the expiration of three years from the first date of delinquency of any tax included in a certificate." That

section of our laws specifies the required contents of the summons in such a suit. Section 69-807 pertains to suits filed by individuals who foreclose certificates of delinquency, but § 69-816 extends those provisions to suits filed by counties for the foreclosure of certificates of delinquency held by the county. According to § 69-816 the foreclosure suit is "a proceeding in rem against the property itself." That section also provides that the person whose name appears as owner upon the latest tax roll must be made defendant. Service of summons is effected by publication once a week for a period of not less than four successive weeks. This section (69-816) also says: "All persons owning or claiming to own or having or claiming to have an interest therein (the property) hereby are required to take notice of said proceedings, and of any and all steps thereunder."

In the manner indicated rather briefly in the preceding paragraph a suit for the foreclosure of the lien of delinquent taxes is instituted. I shall now describe what happens after the suit has been begun. Section 69-820 makes provision for an "application for judgment and decree foreclosing the tax lien." It provides that no decree can be entered unless the plaintiff has made an application of that kind and 60 days has expired after the last day of the month in which the application was filed. Continuing, it permits a defense to the suit by anyone who asserts an interest in the property supposedly delinquent in the payment of its taxes. His pleading must be under oath and must state "the particular cause of objection." When such objection has been filed and an application for judgment has been made, the court "shall hear and determine the matter in a summary manner without other plead-

ings, * * *." It further provides that the court at its discretion may continue any application for judgment wherein a defense had been filed "in order to secure substantial justice to the contestants." The section authorizes amendments to the pleadings to the same extent as are permissible "in any personal civil action." It then recites several possible irregularities in the assessment rolls which shall not be deemed fatal objections and others which in the discretion of the court may be corrected. Further, the section provides:

"The court shall give judgment and decree for such taxes, assessments, penalties, interest and costs, as shall appear to be due upon the several lots or tracts described in said summons and application for judgment and decree, and such judgment and decree shall be a several judgment against and lien upon each tract. * * * and the court shall order and direct the clerk to make out and enter an order for the sale of such real property * * * or vacate and set aside the certificate of delinquency, or make such other order, judgment or decree as in law or equity may be just. Said order shall be signed by the judge, and certified copy of such order, together with a list of the property therein ordered sold, shall be delivered to the sheriff of the county, and shall be full and sufficient authority for him to proceed to sell said property, * * *. The sheriff shall immediately after receiving the copy of the order, judgment and decree of the court, proceed to sell said property * * *."

The section declares that the sale shall be made only after ten days' notice has been given. A copy of the required notice forms a part of the section. Finally, § 69-820 says that at the sheriff's sale the bidder offering to pay the amount due for the least quantity of the property shall be accepted as the purchaser. Section 69-821 directs the sheriff to issue a deed to the purchaser and says that the deed "shall vest in the

grantee, his heirs and assigns, the title to the property.'' Section 69-822 authorizes appeals to this court from the judgments and decrees of the circuit court entered in these suits and directs that the manner of taking the appeals and the proceedings thereafter shall conform to the procedure governing appeals in equitable causes, with a single exception immaterial to our present purpose. Section 69-829 says:

''Any judgment or decree for the sale of real estate shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment and could have been presented as a defense to the application for such judgment or decree in the court wherein the same was rendered, and shall estop all persons from raising any objections as to the amount of the taxes, assessments, penalties, interest or costs due or collectible at the date of the entry of such judgment and decree; and as to all such questions the judgment or decree itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except * * *.''

Here follow exceptions immaterial to our present purpose. The section further declares that any defendant or other person interested in the property who had not appeared in the proceeding ''may, upon good cause shown and upon such terms as may be proper, be allowed to defend and file his objections after such judgment or decree, and within one year after the entry thereof, upon such terms as may be just; * * *.''

The above is a review of all statutes in effect in 1935 material to our present purpose. Subsequent amendments have been made, but none of them has altered the fundamentals of the 1907 act—a foreclosure of the lien of the delinquent taxes by a judicial proceeding.

The preceding review makes it clear that when the suit entitled *Marion County v. Highstone* was instituted our statute books contained a complete code of procedure for the foreclosure of the liens of delinquent taxes. That procedure authorized the maintenance of a suit in the circuit court in which the property is deemed the party defendant. The suit is a proceeding in rem, and is begun by the filing of a summons. The procedure does not contemplate the filing of a complaint, but the absence of such a pleading is immaterial since the information generally found in a complaint must, by virtue of § 69-807, be included in the summons. The application for judgment, which must be filed before judgment can be rendered, amplifies the information contained in the summons. The procedure makes provision for the appearance of any owner whose property is described in the summons and who wishes to challenge the tax or any phase of the alleged liability of his property. Such an owner files a "cause of objection." The next step is taken by the county which must file the aforementioned "application for judgment." Those two documents thereupon become, in part at least, the pleadings. Section 69-820 authorizes amendments to them to the same extent as amendments are allowed in other types of civil proceedings. After both of these papers have been filed, the trial occurs. Adequate provision is made for appeal from the decree. It will be seen from the rather elaborate provisions of § 69-829 that the legislature contemplated that the entry of the decree of foreclosure, in the event no appeal is taken, should terminate all disputes and claims concerning the delinquent taxes, their foreclosure and the resulting sale, except claims (1) that the tax had been paid, or (2) that the property was not taxable.

To make doubly sure of its meaning, § 69-829 expressly says:

· "As to all·such questions the judgment or decree itself shall be conclusive evidence of its regularity and validity in all collateral proceedings except    *   *   *."

There follows a statement of the two exceptions just indicated. Thus, § 69-829 is a statement in statutory form of the rule which renders judgments and decrees immune from collateral attack.

As already said, the defense in *Smith v. Carlson* was a collateral, not a direct, attack upon the decree entitled *Marion County v. Highstone.* The defense could not succeed unless that decree was swept aside. *Smith v. Carlson* swept it aside and held that that decree was void. The sole reason for the holding was a finding that excessive costs had been awarded to Marion County, the plaintiff in the foreclosure suit. But § 69-829 declares that the entry of the decree in the delinquent tax foreclosure suit "shall estop all persons from raising any objections as to the amount of   *   *   *   costs   *   *   *; and as to all such questions the judgment or decree itself shall be conclusive evidence of its regularity and validity in all collateral proceedings."

No citation of authority is required to justify the statement. that no judgment is subject to collateral attack unless it is wholly void. The mere fact that the court which entered it committed error, however glaring it was, does not warrant disregard of the judgment in another proceeding if the court had authority to pass upon the case and had jurisdiction over the persons, if the action was a personal one, or over the property, if the cause was in rem. Therefore, the sole inquiry when a collateral attack is made upon a judg-

ment is whether the court possessed jurisdiction. In the early case of *Nicklin v. Hobin*, 13 Or. 406, 10 P. 835, this court, in an able opinion written by Mr. Justice LORD, applied those principles to a situation closely akin to the present one. In that case it appeared that one Brenan, upon an appeal to the circuit court from a judgment of a justice of the peace, won a verdict for $1.00 against Hobin, the defendant in the above-cited case. But the circuit court awarded to Hobin judgment against Brenan in the amount of $62.95 costs. Later, Brenan died and then the plaintiff, as administrator of his estate, commenced the suit under review; he asked for an injunction to restrain Hobin from enforcing payment of the judgment. The circuit court granted an injunction. The above-cited decision, in entering a decree for the defendant (Hobin), said:

"Although it may be true that the amount of costs taxed or allowed by the court was wrong, still it was but an error of judgment not a defect of jurisdiction. * * * The question whether a judgment is right or wrong is a very different one from whether it is valid or void. * * * And where a court has jurisdiction, the judgment or determination is binding and obligatory until reversed, without reference to the question whether it is right or wrong. 'Nor is it any ground for disregarding a judicial determination that one party has got a great deal more than was justly due him.' "

Recently we applied the same rule. In *Travelers Insurance Co. v. Staiger*, 157 Or. 143, 69 P. (2d) 1069, we said:

"From collateral attack all judgments are invulnerable unless they be void. An erroneous award of costs made, however, by a court which possesses jurisdiction to tax costs does not render the award void and the resulting judgment subject to collateral attack."

By virtue of the express provisions of §§ 69-815 and 69-816, Oregon Code 1930, the circuit court had

authority to award costs in *Marion County v. Highstone.* It seems clear that an excessive award of costs in that suit could not render the decree and the resulting sale void. But before reaching a final conclusion, let us consider some other phases of the matter.

The decree entered in *Marion County v. Highstone* against the property of the Carlsons was a default decree; and, of course, the proceeding was in rem. The rule which renders judgments immune from attack in another proceeding is applicable to judgments in rem: Freeman on Judgments, 5th ed., § 1531, and 31 Am. Jur., Judgments, p. 178, § 579. That rule also applies to default judgments: Freeman on Judgments, 5th ed., § 1297; Black on Judgments, 2d ed., § 246; and 31 Am. Jur., Judgments, p. 178, § 579. Authority can also be found for the statement that immunity from indirect attack is enjoyed by judgments entered in summary proceedings: 34 C. J., Judgments, p. 514, § 816.

The rule which I have been mentioning and which protects judgments from collateral attack is universally deemed a shield for judgments of courts which direct the sale of land for delinquent taxes: Freeman on Judgments, 5th ed., § 400; Black on Judgments, 2d ed., § 247; 34 C. J., Judgments, p. 516, § 819; and see *Clinton v. City of Portland,* 26 Or. 410, 38 P. 407.

Our laws authorizing the foreclosure of the lien of delinquent taxes had their inspiration in the laws of the State of Washington upon the same subject and, as was said in *Hoskins v. Dwight,* 69 Or. 558, 139 P. 922:

"When the statute of another state has been incorporated in the laws of Oregon, the interpretation placed upon the enactment by the court of last resort of the state from which the law was taken and made before

its adoption in this state governs the construction to be placed upon it in Oregon."

The decision was speaking of the very enactment (1907 Session Laws, Ch. 267) with which we are now concerned. In *Getchell v. Walker*, 129 Or. 602, 278 P. 93, the same view was voiced. We there said concerning the same statute:

"The decisions of the Supreme Court of Washington are entitled to great weight because our legislature is supposed to have had knowledge of them when our statute was enacted."

Let us, therefore, turn to the Washington decisions and ascertain whether in that state a decree for the foreclosure of delinquent taxes was subject in 1907 to collateral attack of the type sustained in *Smith v. Carlson* upon the decree entered in *Marion County v. Highstone.*

Chapter 124, § 132 (p. 382) of 1893 Session Laws of Washington said:

"* * * any judgment for the sale of real estate for delinquent taxes rendered after the passage of this act, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or assessments have been paid, or the real estate was not liable to the tax or assessment."

That enactment became § 1767 Bal. Code. It will be observed that that law is substantially the same as the part of § 69-829 previously quoted. In fact, ours, with

the exception of some strengthening clauses, was taken word for word from the Washington act.

From *Swanson v. Hoyle*, 32 Wash. 169, 72 P. 1011, decided in 1903, four years before our 1907 legislative session convened, the following is taken:

"It is next insisted that the judgment should have been vacated because there was an illegal tax, amounting to 97 cents, for the year 1897, which was included in the judgment. A number of authorities are cited to the effect that a sale for taxes more than are lawfully chargeable is a sale without jurisdiction, and therefore void. This rule is possibly correct where the sale is made upon an assessment and levy by ministerial officers, and where there is no opportunity to test the legality of the tax until after sale. But where the sale is made upon a judgment by a court of general jurisdiction, and where the owner of the property is regularly summoned to appear, and has an opportunity to defend against irregularity of the tax levy or the amount of the tax, and neglects to do so, and where the court has jurisdiction to give judgment for the amount of the taxes which shall appear to be due, and which appears in law and equity to be just, as is the rule under the statute above quoted, a different rule applies. Kizer v. Caufield, 17 Wash. 417, 425 (49 Pac. 1064). If the 97 cents was not properly chargeable against the property, the defendant could have defended against the judgment to that extent. Objections of this character are matters of defense to the original action. They are not matters which could be properly considered in the case at bar, because this is not an action to correct errors. It is one to vacate the whole judgment. If errors which could have been avoided by the appearance of the defendant have crept into the judgment by reason of his default, he cannot complain thereof, after judgment is entered, where the court has jurisdiction."

*Washington Timber etc. Co. v. Smith*, 34 Wash. 625, 76 P. 267, decided in 1904, three years before our act

was enacted, also rejected a collateral attack upon a tax foreclosure judgment. From it I quote:

"The next objection to the sufficiency of the foreclosure is that the certificates of delinquency were not properly filed in the office of the clerk of the superior court before publication of summons. * * * It having been already determined that the court had jurisdiction of the cause by reason of the time the certificates were issued, and it appearing by the record that the certificates were filed in time, it follows that the point now raised relates to a mere irregularity which should have been raised in the foreclosure case. While the *nunc pro tunc* order was made after judgment, yet, assuming, as we must, that the record speaks the truth, the correction was such a one as could have been made during the progress of the action, under § 18, p. 299, Laws of 1899. Appellant is therefore estopped to raise the objection now. See § 1767, Bal. Code. Also Swanson v. Hoyle, 32 Wash. 169, 72 Pac. 1011. The summons and its publication, we think, complied with the law. The property owner was therefore within the jurisdiction of the court, and was required to take notice of the action. The summons was by publication, it is true, but, under § 3, pp. 385, 386, Laws of 1901, 'all persons owning or claiming to own, or having or claiming to have, an interest therein are hereby required to take notice of said proceedings, and of any and all steps thereunder.'

"Appellant insists that, notwithstanding the statutes above cited and quoted, it is not estopped to raise objections now, and argues that Illinois has similar statutes, but that it has been held in that state that, where the taxpayer does not appear and make objection prior to the rendition of the judgment, there is no estoppel. It appears to have been so held in Belleville Nail Co. v. People ex rel., 98 Ill. 399. We, however, find no Illinois statute with a specific declaration that parties shall be estopped, as is the case in our statute cited above. With such a provision in our law, and with the positive declaration, quoted above, that all interested persons shall take notice of the steps taken

in the cause, we see no reason why the statute shall not be given the force which was evidently intended, notwithstanding the fact that the summons is by publication only. The difficulties attending the collection of public revenue are many at best, and the relation of the citizen to the subject is somewhat different from his relation to the ordinary contractual obligations. He must take notice that by law his property is assessed each year, that the tax is due and delinquent at a fixed time, is a lien upon his land, and, if not paid, that the lien shall be enforced by foreclosure proceedings, and in the manner provided by statute. The action is not *in personam* but *in rem*, and we see no reason for making the distinction recognized by the above Illinois case, apparently based upon the ground that the service was by publication only."

In *Rowland v. Eskeland*, 40 Wash. 253, 82 P. 599, decided in 1905, two years before the Washington act was adopted in this state, the foreclosed owner brought an action of ejectment against the purchaser at the tax foreclosure sale. He presented three contentions: (1) nonservice of summons upon him; (2) although two-thirds of the property was nonassessable, the levies had been made upon the property as a whole; and (3) although the property was not a single tract, but consisted of two separate parcels, the assessment, the certificate, the foreclosure and sale treated the property as a single unit.

The first contention was, of course, available in a collateral attack. However, the court found it lacked merit and therefore rejected it. But the second and third contentions did not concern jurisdiction over the cause or over the parties. After the court had quoted the above-cited Washington statute, it dismissed those two attacks thus:

"If appellants desired to contest the collection of the taxes because of matters set out in the second and

third defenses, they were required to do so in the fore-closure action. These questions can not be tried in this collateral proceeding, under the statute above cited.''

Those three decisions were announced prior to 1907. None of them has been overruled; to the contrary, the Washington supreme court has constantly deemed tax foreclosure decrees immune from collateral attack. They have been held immune to the same extent as are judgments and decrees in all other types of judicial proceedings. It should be noted, however, that the tax statutes create two exceptions based upon the peculiar features of taxation: (1) where the property is non-assessable; and (2) when the tax was paid before the decree was entered.

A recent application by the Washington court of the rule which renders tax foreclosure decrees immune from collateral attack is *Colby v. Himes,* 171 Wash. 83, 17 P. (2d) 606. In that decision the court once more rejected an attack upon a tax foreclosure decree. In so doing it reviewed and endorsed several of its previous decisions. A reading of that decision will indicate with what unswerving loyalty the court has held to its thesis that a decree entered in proceedings of this kind is conclusive evidence of its validity and regularity.

In *Wilfong v. Ontario Land Co.,* 171 Fed. 51, the Circuit Court of Appeals for the Ninth Circuit gave effect to the interpretations made by the Supreme Court of Washington of their aforementioned statute and rejected a collateral attack. Referring to the departure from the statute upon which the foreclosed owner depended, the decision termed it ''an irregularity which must be objected to if at all in the fore-closure proceeding.''

*Timmerman v. McCullagh,* 55 Wash. 204, 104 P. 212, another of the Washington decisions, is very much in

point. Its facts are quite similar to those in *Swanson v. Hoyle*, supra. It reversed a judgment in favor of the foreclosed owner entered in the superior court in a collateral attack upon the tax title. We now quote from the decision:

"There was an overcharge of interest, making the total sum recited as due in the certificate of delinquency somewhat larger than it should have been. Judgment was entered for this larger sum, and the property sold to satisfy the judgment. It is contended that the sale is void because of this excessive charge. But this was not fatal. Overcharges by the taxing officers have usually been held fatal to a summary sale of property for taxes where the proceedings are ex parte. But the sale in this instance was not summary nor ex parte. In this state sales of property for taxes are made only after a foreclosure of the tax lien, in a proceeding in which the owner is given notice and an opportunity to defend against overcharges or mistakes which increase the amount properly due. Being a party to the proceedings, he is estopped by the judgment to question collaterally matters which do not go to the jurisdiction of the court to render the judgment."

The above will suffice as a review of the Washington decisions. All of them gave effect to the rule which protects judgments (which are not invalid upon jurisdictional grounds) from collateral attack. And all of them were obedient to the legislative mandate which says that the foreclosure decree "shall estop all parties from raising any objections thereto" (the foreclosure decree) which could have been presented when the judicial action was taken, and which further declares that the decree "shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in * * *." It will be observed from the textbook citations previously given that the courts uniformly deem decrees entered in tax foreclosure proceedings

as immune from collateral attack. And it will be recalled that Mr. Justice LORD, in *Nicklin v. Hobin*, supra, held that an erroneous award of costs by a court which had authority to tax costs does not subject the judgment to collateral attack. I am satisfied that the Washington decisions are sound and that our statutes are entitled to similar interpretation.

Let us now test *Smith v. Carlson* by the principles just reviewed. By that decision, because of an excessive award of costs, we impeached the decree entered in *Marion County v. Highstone*. But the circuit court which awarded the costs had jurisdiction over the cause (foreclosure of the liens) and over the res. It likewise had express authority to award costs and determine their amount: § 69-315. Section 69-829 says that the decree "shall estop all persons from raising any objections as to the amount of the  *  *  *  costs due or collectible at the date of the entry of such judgment and decree." When it developed that an excessive award of costs had been made, the owners of the property in question had three remedies: (1) to object to the costs; (2) to move within one year of the entry of the decree for its vacation; or (3) to appeal. Those were the remedies available to the delinquent taxpayer, and not the one which they chose. As we have seen, our own decisions have twice held that a judgment for costs is invulnerable to collateral attack to the same extent as judgments and decrees for any other type of relief. Other courts have held to the same effect: 34 C. J., Judgments, p. 564, § 864.

When the decision entitled *Smith v. Carlson* was written we overlooked the fact that in the crucible of the 1907 comprehensive act the old procedure of sale upon the warrant of the county clerk was converted

into something fundamentally different. From that crucible there emerged the requirement of a judicial sale of the delinquent property which could take place only after a judicial determination of the amount due and the entry of an order directing that the sale be made. Having overlooked the fact that fundamental change had occurred, we cited in support of our decision *Walton v. Moore,* supra, and *Hodgkin v. Boswell,* 63 Or. 589, 127 P. 985, both of which were concerned with the old procedure of sale upon the warrant of the county clerk.

The purpose of the 1907 act was to bring about a new course of procedure. It was a new beginning and represented a fresh approach to the problem of delinquent taxes. Under the old procedure the foreclosing officers commonly made a slip-up before the deed was delivered, and, since the delinquent owner was afforded no opportunity to manifest his objections, his suit for the nullification of the sale was usually successful. This was true even though the irregularity involved nothing but a few pennies. In that manner a maze of rules, often quite technical, were spun which in turn caused tax title after tax title to fail until finally tax deeds were regarded as nothing more important than scraps of paper. The decisions followed no pattern. The situation was indeed sui generis. Then came the 1907 act. The very purpose of new laws is often to get rid of old ideas, clarify the atmosphere and usher in a new course of procedure. The very heart of the new procedure is the suit for the foreclosure of the lien of delinquent taxes. If that feature of the procedure is faded out by judicial construction, nothing of consequence was accomplished through the 1907 act. I am satisfied that *Walton v. Moore,* supra, and *Hodgkin v. Boswell,* supra, are inapplicable to the

procedure inaugurated by the 1907 act. Under that act and its subsequent amendments all existing objections must be presented before the foreclosure decree is entered—they cannot be reserved for a later collateral attack upon the decree. Every owner of real property is charged by the act with notice that his property is subject to taxation, that unpaid taxes become delinquent, and that the lien of delinquent taxes may be foreclosed in a proceeding in rem. He owes a duty to the state to keep informed concerning proceedings filed against his property.

This court has several times taken notice of the new procedure ushered in by the 1907 act. For instance, in *Hoskins v. Dwight*, the decision says:

"The statute now in vogue making taxes charged against real property a lien thereon, and providing for the foreclosure thereof, gives the owner of the premises, upon whom a summons must be served, a day in court where he may present his defense, and affords him an opportunity to be heard before he can be deprived of his land   *   *   *."

The following decisions, in addition to the one from which I have just quoted, recognized the new procedure: *Peterson v. Graham*, 131 Or. 290, 279 P. 553, 282 P. 1084; *Getchell v. Walker*, 129 Or. 602, 278 P. 93; *Coos County v. Stout Lumber Co.*, 126 Or. 525, 270 P. 491; *Gordon v. Adams*, 125 Or. 662, 268 P. 60; *Flynn v. Davidson*, 80 Or. 502, 155 P. 197, 157 P. 788. This list is not exhaustive.

I am satisfied that a foreclosure decree of the kind entered in *Marion County v. Highstone* is not subject to collateral attack. An objection concerning the amount of costs should have been voiced in the original proceeding. An owner who is the victim of a slip-up

whereby his costs are miscalculated cannot ignore the judicial proceeding to which he has been summoned, permit his property to be sold and later institute a suit which, if sustained, will nullify all of the expensive work connected with the foreclosure of the liens of his delinquent taxes. Undoubtedly had the objection concerning these few cents of additional costs been presented to the court which adjudicated *Marion County v. Highstone,* the correct amount would have been promptly and inexpensively determined.

Notwithstanding our decision in *Smith v. Carlson,* I believe the irregularity concerning the taxation of costs cannot be employed in this action for the purpose of impeaching the decree upon which the Smiths' title is based. To employ the language of § 69-829, the plaintiff is "estopped" to make that contention, and the deed itself is "conclusive evidence of its regularity and validity." By holding otherwise foreclosure decrees, which in many instances are entered only after much expensive labor has been spent by the county officials, will be merely starting points for more law suits and more litigation.

Possibly it may be said that *Darling v. Christensen,* 166 Or. 17, 109 P. (2d) 585; *Watson v. Jantzer,* 151 Or. 1, 47 P. (2d) 239; *Barber v. Newbegin,* 154 Or. 55, 58 P. (2d) 1254, and *Wing v. Parrott,* 154 Or. 405, 60 P. (2d) 603, are to like effect as *Smith v. Carlson,* and that if we adopt the interpretation of § 69-829 above stated we will disturb the titles to many tracts of land. All five of the decisions just cited adjudicated titles to parcels of real property. For obvious reasons they should not be disturbed and nothing which we can now do would affect them.

The principle of law which is applicable to the situation before us is thus stated in 14 Am. Jur., Courts, p. 345, § 130:

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision."

See to the same effect 21 C. J. S., Courts, p. 329, § 194b. Moreover, as is said in subdivision (a) of the section of the treatise just cited,

"A court of final decision may expressly define and declare the effect of a decision overruling a former decision, as to whether or not it shall be retroactive, or operate prospectively only, and may, by a saving clause in the overruling decision, preserve all rights accrued under the previous decision."

Hence, we need not be disturbed lest anything we now hold will impair any title which is based upon previous interpretations of the act under consideration.

Although I believe that our previous opinion correctly dealt with every issue which the briefs submitted, I am satisfied that the defendants' title is not subject to attack and that it must be sustained. The reasons developed in preceding paragraphs convince me that the objections which the plaintiff now presents against the defendants' tax title should have been voiced in the circuit court suit entitled *Marion*

*County v. Highstone* and that they cannot be considered in this proceeding. That conclusion, I am satisfied, is demanded by § 69-829. Thus, I reach the conclusion that the defendants' title is free from defects, and since it is free from defects, the defendants needed no help from the statute of limitations.

I concur in the result reached by the majority. The above are my reasons.